IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00805-LTB

JOHN DOES I-V

      Plaintiffs,

v.

MOISES RODRIGUEZ, individually, and in his official capacity,
MARIA RODRIGUEZ, individually, and in her official capacity,
ANDREW L. GRANT, individually, and in his official capacity, and
GRANT FAMILY FARMS, INC., a Colorado corporation

      Defendants.

---

## ANDREW L. GRANT'S MOTION TO DISMISS

---

      Defendant Andrew L. Grant ("Grant"), through undersigned counsel, and pursuant to F.R.C.P. 12(b)(6), respectfully requests that the claims asserted against him by plaintiffs John Does I-V ("Plaintiffs" or "Plaintiff Workers") be dismissed for the failure to state a claim upon which relief can be granted.  As grounds in support, Grant states as follows.

### SUMMARY OF POSITION

      Plaintiffs, in their 159-paragraph Complaint, seek to hold Grant individually liable for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* (the "FLSA") and the Agricultural Worker Protection Act, 29 U.S.C. §1801 *et seq.* (the "AWPA"), on the theory that he was an "employer" or "joint employer" of Plaintiffs, together with Grant Family Farms, Inc. (the "Family Farm Corporation"), and Moises and Maria Rodriguez (referred to jointly as the "Contractor Defendants").

Notwithstanding its length, the Complaint does not contain even a *single* well-pled fact that could support either the conclusion that Grant is the alter ego of the Family Farm Corporation, or the conclusion that he was Plaintiffs' "employer" within the meaning of the FLSA or the AWPA. On the contrary, virtually every allegation relevant to the "employer" determination establishes that Plaintiffs were the employees only of the Contractor Defendants: The Contractor Defendants dictated and controlled virtually every aspect of the worker's employment – from recruitment and travel to where, and at what pace, they were to work, from their off-hour living conditions to the manner, method and amount of money they were paid.

In contrast, Grant is not alleged to have played any role in any of the employment-related activity undertaken by the Contractor Defendants. Indeed, the Complaint does not contain any allegation that any of the Plaintiffs interacted with Grant in any way on even a single occasion. Instead, the Complaint unremarkably alleges that Grant and the Family Farm Corporation "decided which crops would be planted and when they would be harvested". Complaint at ¶70. It is the allegation that Grant (or, more accurately, the Family Farm Corporation) decided what crops it would grow and when they would be harvested, that Plaintiffs primarily rely upon as the basis for seeking to hold Grant personally liable of violations of the law which, if they occurred at all, unquestionably occurred solely at the hands of the Contractor Defendants.

Not surprisingly, there is no authority that supports the conclusion that an individual like Grant can be deemed to be the employer or joint employer of agricultural workers simply because the corporate farm that he works for decides what crops to grow and when they should be harvested. Thus, even when the facts alleged in Plaintiffs' Complaint are

2

accepted as true and all reasonable inferences from those allegations are drawn in Plaintiffs' favor, the claims asserted against Grant must be dismissed because the Complaint fails to state a claim upon which relief can be granted.

## THE PARTIES

Plaintiffs are five unnamed Mexican nationals who worked in Colorado in the agricultural sector. Complaint at ¶¶15-19.

The Contractor Defendants are alleged to be "farm labor contractors" who, among other things, "recruited, solicited, hired, transported, and housed Plaintiff Workers." *Id.* at ¶21.

Grant is a resident of the State of Colorado who is (accurately) alleged to be the President and registered agent of the Family Farm Corporation. *Id.* at ¶¶29, 40.

The Family Farm Corporation is a Colorado corporation that operates an organic farm in Larimer County, Colorado. *Id.* at ¶¶31, 63.

## PLAINTIFFS' COMPLAINT

A.  The Violations Of Law Alleged By Plaintiffs.

Plaintiffs' Complaint charges Grant and the other defendants with violating the FLSA and the AWPA, and the Complaint leaves no doubt but that all of these alleged violations were caused directly, and solely, by the Contractor Defendants.[1]

---

[1] The Complaint alleges additional violations of law against only the Contractor Defendants that are irrelevant to this motion.

The Complaint often attributes particular conduct to either Maria or Moises Rodriguez, but for ease of reference we attribute all of this conduct to the Contractor Defendants generally, and without differentiating between Maria and Moises.

3

In their First Cause of Action, Plaintiffs allege that the FLSA was violated by defendants as a result of the "fail[ure] to pay minimum wages to Plaintiff Workers". Complaint at ¶116. Although the Complaint charges, "upon information and belief", *ibid.*, that Grant is responsible for this failure along with the Contractor Defendants, elsewhere Plaintiffs specifically allege that the Contractor Defendants were solely responsible for "paying the workers", *id.* at ¶79, that the Contractor Defendants "were making numerous unauthorized and illegal deductions from their pay", *id.* at ¶80, that the Contractor Defendants "'rounded-down' the numbers of hours worked", *id.* at ¶83, and that the Contractor Defendants charged Plaintiffs a "check-cashing fee", *id.* at ¶84 – all of which had the net effect that, "Plaintiff Workers were paid much less than the minimum wage of $5.15 per hour mandated by the FLSA". *Id.* at ¶85. The Complaint contains no allegations that Grant played any role in doing any of the things that are alleged to have resulted in a violation of the FLSA.

In their Second Claim for relief, Plaintiffs allege myriad violations of the AWPA – all of which mirror in form the alleged violation of the FLSA, *to wit*, a specific violation of the statute is advanced, the Complaint specifically and unambiguously alleges that it was the Contractor Defendants, and nobody else, who was responsible for the illegal conduct, and the Complaint asserts, "upon information and belief", that Grant also is responsible for that alleged violation.

For instance, Plaintiffs first claim is that the AWPA was violated because, "at the time of recruitment [Plaintiffs were not provided] with a written disclosure of the terms and conditions of employment". Complaint at ¶120. However, and notwithstanding the assertion that, "upon information and belief", *ibid.*, Grant is responsible for this failure along with the

4

Contractor Defendants, Plaintiffs specifically allege that it was the Contractor Defendants who recruited Plaintiffs, and there is no allegation that Grant played any role in that recruitment whatsoever. *See, e.g.,* Complaint at ¶43 ("In or around March, 2004, Contractor Defendants began recruiting workers in Mexico to come to Colorado"); ¶47 ("Contractor Defendant[s] . . . personally traveled from Hudson, Colo. to Phoenix on several occasions to pick up workers"); ¶50 (When he [Moises Rodriguez] made contact with the worker, he did not provide any written disclosures of the terms and conditions of employment").

Similarly, Plaintiffs allege that the AWPA was violated as a result of "knowingly giving false and misleading information to Plaintiffs", *id.* at ¶122, but there is not a single allegation that Grant ever provided any information to any of the Plaintiffs at any time. Instead, the Complaint uniformly establishes that whatever information had been provided to Plaintiffs, was provided solely by the Contractor Defendants. *See, e.g.,* Complaint at ¶59 ("Contractor Defendant[s] . . . informed [Plaintiffs] that they each owed him $1,300 . . . and they would not be permitted to leave his employ until they paid that debt"); ¶102 ("Contractor Defendants [defrauded Plaintiffs] . . . by means of false or fraudulent pretenses, representations, or promises").

The Complaint also alleges violations of the AWPA resulting from the failure to pay "wages when due", *id.* at ¶123, the failure to "make, keep and preserve complete payroll records", *id.* at ¶124, and the failure to provide "accurate itemized pay statement[s]", *id.* at ¶125. But, as we demonstrate above, the Complaint unequivocally alleges that it was the Contractor Defendants, and them alone, who were responsible for paying, calculating and documenting Plaintiffs' wages. *See, supra,* p. 4 (discussing FLSA claim).

5

Finally, Plaintiffs allege that their transportation "in unsafe vehicles" violated the AWPA, Complaint at ¶126, and the Complaint leaves no doubt that Plaintiffs' transportation was arranged and undertaken solely by the Contractor Defendants, without any involvement by Grant whatsoever.  *See, e.g.,* Complaint at ¶48 ("From Phoenix, Contractor Defendant[s] . . . transported workers to [Colorado]"); ¶51-2 ("Contractor Defendant[s] . . . forced the workers to lie down in the back of his vehicle . . . with no seatbelts or other safety measures"); ¶66 ("Contractor Defendant[s] . . . transported the workers to the fields in a yellow school bus").

 2.     The Allegations Underlying The Claim That
        Grant Was Plaintiffs' "Employer" or "Joint
        Employer".

Beyond the Complaint's conclusory assertions that Grant was an "employer" or "joint employer" of Plaintiffs,[2] the Complaint says almost nothing about Grant and most of what is said relates only to general matters of identity or jurisdiction.  *See, e.g.,* Complaint at ¶¶ 38-31, 39-42.  With respect to the "employer" issue, the Complaint contains only three even arguably relevant allegations:

---

[2] *E.g.* Complaint at ¶2 ("Plaintiff Workers were jointly employed by . . . Grant"); ¶9 ("Plaintiff Workers . . . were employees of [Grant]"); ¶13 ("Plaintiff Workers were employees of . . . [Grant]"); ¶28 ("Upon information and belief . . . Grant . . . was an employer or joint employer of Plaintiff Workers"); ¶88 (Grant is "responsible for FLSA and AWPA violations as joint employer[]").

Although a court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, a district court need not accept as true conclusory legal allegations cast in the form of factual allegations.  *See, e.g., Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir.1968), *cert. denied,* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969).  *See also Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based").

a. "While Contractor Defendant[s] . . . oversaw the workers in the fields, [Grant and the Family Farm Corporation] decided which crops would be planted and when they would be harvested", Complaint at ¶70;

b. "Contractor Defendant[s] . . . regularly consulted with [Family Farm Corporation], including Defendant Andrew Grant and other representatives, in the course of the workday", *id.* at ¶71; and

c. "Occasionally, Contractor Defendant[s] . . . brought Plaintiff Workers to work at other farms.  However the vast majority of their work days were spent in the fields of [the Family Farm Corporation]", *id.* at ¶65.

Even when these allegations are accepted as true, as they must be in ruling on Grant's F.R.C.P. 12(b)(6) motion, it is clear that they provide no basis for imposing liability on Grant for the purported violations of the FLSA and AWPA alleged by Plaintiffs.

ARGUMENT

The provisions of both the FLSA and the AWPA apply to "employers" of agricultural workers, and "the definition of 'employ' is the same under both statutes:  an entity 'employs' a person if it 'suffers or permits' the individual to work." *Martinez-Mendoza v. Champion Int'l Corp.,* 340 F.3d 1200, 1207-08 (11th Cir.2003) (internal citations omitted).  "Courts generally agree that an entity 'suffers or permits' an individual to work if, as a matter of 'economic reality,' the entity functions as the individual's employer." *Zavala v. Wal-Mart Stores, Inc*., 393 F.Supp.2d 295, 326 (D.N.J.2005) (citing *Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 66 (2d Cir.2003) and *Johnson v. The Unified Gov't of Wyandotte County,* 371 F.3d 723, 729 (10th Cir.2004)).

1. There Are No Allegations That Could Support Piercing The Corporate Veil, And The "Economic Reality" Test Is Not A Substitute For, Nor Is It Intended To Abrogate, The Requirements For Doing So.

Although the Complaint rightly alleges that Grant is the President and registered

7

agent of the Family Farm Corporation, it never so much as suggests that Grant abused the corporate form in any way that could support piercing the corporate veil and holding Grant personally liable for the conduct of the Family Farm Corporation (assuming, of course, that there is any basis for imposing liability on the corporation to begin with).  *See, e.g., N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1053 (10th Cir.1993) ("the federal common law doctrine of piercing the corporate veil under an alter ego theory can best be described by the following two-part test: (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations") (internal citations omitted).[3]

The law in this Circuit is clear, however, in establishing that, "the mere fact that a corporation commits an unfair labor practice, or breaches a contract, or commits a tort, does not mean that the individual shareholders of the corporation should be personally liable.  To the contrary, the corporate form of doing business is typically selected precisely so that the individual shareholders will not be liable.  It is only when the shareholders disregard the separateness of the corporate identity *and when that act of disregard causes the injustice or inequity or constitutes the fraud* that the corporate veil may be pierced."  *Id.* at 1053

---

[3] "Among the specific factors considered by the court in determining whether the corporation and its stockholders have maintained their separate identities are (1) whether a corporation is operated as a separate entity; (2) commingling of funds and other assets; (3) failure to maintain adequate corporate records or minutes; (4) the nature of the corporation's ownership and control; (5) absence of corporate assets and undercapitalization; (6) use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and (8) diversion of the corporation's funds or assets to noncorporate uses.".  *Id.* at n. 6.

(emphasis in original). *See also F.D.I.C. v. First Interstate Bank of Denver*, 937 F.Supp. 1461, 1467 (D.Colo.1996) ("[t]o pierce the corporate veil, evidence must show that the corporate entity was used to defeat public convenience, or to justify or protect wrong, fraud or crime") (internal citations and quotations omitted).

Because Plaintiffs advance no allegations that could support any of the findings necessary to pierce the corporate veil and hold Grant personally liable for any conduct undertaken by him in his capacity as President of the Family Farm Corporation, the claims against Grant must be dismissed.

The fact that the provisions of FLSA and AWPA apply to those who are "employers" as determined by the economic reality test in no way alters this conclusion, because the "'employer' test described [in the FLSA and AWPA] does not appear to contemplate effectively piercing the veil of a legal entity for purposes of holding an individual liable for the acts of such entity but rather addresses the question of whether a variety of separate entities associated with an agricultural worker may develop the sort of relationship with such employee sufficient to subject them to joint liability for any violations [of the statutes]". *Borjas v. Cagel's-Keystone Foods, LLC*, 2004 WL 569520 at *1 (W.D.Tex. March 9, 2004).

Moreover, even those courts that arguably have relaxed the traditional requirements for piercing the corporate veil and imposed liability on individual corporate officers for violations of federal law, still have required proof of conduct that Plaintiffs' Complaint fails to allege. *See, e.g., Schneider v. Landvest Corp.*, 2006 WL 322590 at *22 (D.Colo. Feb.9, 2006) ("a corporate officer with operational control who is directly responsible for a failure to pay statutorily required wages is an 'employer' along with the corporation, and is jointly and severally liable for the payment of wages" and holding that an individual corporate

officer "was an employer for purposes of the FLSA [where p]laintiffs showed that [the officer] had authority over the pay practices at [the company], and was involved in the implementation of the overtime policies of [the company, and where he] was personally involved in granting or denying requests for overtime compensation and intervened in pay matters involving compensation to individuals for hours recorded on their time sheets [and] formulated the record keeping and overtime policies which resulted in [the company's] failure to pay Plaintiffs the compensation due them").

In contrast to the facts in *Schneider* and similar cases, the Complaint contains no allegations that Grant (or the Family Farm Corporation for that matter) played any role at all in the pay practices of the Contractor Defendants about which Plaintiffs complain, or that he played any role in implementing the Contractor Defendants' policies, or that he ever intervened in any pay disputes between Plaintiffs and the Contractor Defendants, or that he formulated the policies or kept the time records that resulted in the violations alleged by Plaintiffs.

Plaintiffs Complaint does not contain a single well-pled fact that could support piercing the corporate veil, or holding Grant individually liable for any conduct purportedly attributable to the Family Farm Corporation. Consequently, the claims asserted against Grant must be dismissed.

2.  Plaintiffs' Complaint Fails To Allege Facts
    That Are Sufficient To Support A Finding
    That Grant Was An Employer As A Matter
    Of "Economic Reality".

Even if this Court were to ignore the well-established requirements for piercing the corporate veil and conclude that Grant's potential liability is to be based solely on the application of the "economic reality" test developed under the FLSA and AWPA, the claims

against Grant must still be dismissed because the Complaint contains insufficient facts to support even the inference that Grant was an "employer" or "joint employer" of Plaintiffs under that test.

To determine whether the "economic reality" of the relationship between Grant and Plaintiffs supports a finding that Grant was an employer of Plaintiffs, "several factors are to be considered . . . including: (1) whether the agricultural employer has the power, either alone or through the [farm labor contractor], to direct, control, or supervise the worker or the work performed (such control may be either direct or indirect, taking into account the nature of the work performed and a reasonable degree of contract performance oversight and coordination with third parties); (2) whether the agricultural employer has the power, either alone or in addition to another employer, directly or indirectly, to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payment for the worker; (3) the degree of permanency and duration of the relationship of the parties, in the context of the agricultural activity at issue; (4) the extent to which the services rendered by the worker are repetitive, rote tasks requiring skills which are acquired with relatively little training; (5) whether the activities performed by the worker are an integral part of the overall business operation of the agricultural employer; (6) whether the work is performed on the agricultural employer's premises, rather than on premises owned or controlled by another business entity;  and (7) whether the agricultural employer undertakes responsibilities in relation to the worker which are commonly performed by employers, such as preparing and/or making payroll records, preparing and/or issuing pay checks, paying FICA taxes, providing workers' compensation insurance, providing field sanitation facilities, housing or transportation, or providing tools and equipment or materials required for the job (taking into

11

account the amount of the investment)." *Martinez-Mendoza v. Champion Int'l Corp.,* 340 F.3d 1200, 1209 (11th Cir.2003) (citing 29 C.F.R. §500.20(h)(5)(iv)(A)-(G)).  No one factor is controlling.  *Ibid.*

Almost without exception, Plaintiffs' Complaint contains no allegations which, when applied to these factors, could support a finding that Grant was an employer for purposes of either the FLSA or the AWPA.

    a.    Control, direction and supervision of the workers.

The Complaint specifically alleges that the Contractor Defendants directly supervised the plaintiffs in terms of the pace, method and location of their work.  Complaint at ¶¶66-9 ("Contractor Defendant[s] . . . watched the workers in the fields through binoculars" and would instruct a supervisor employed by Contractor Defendants to "force the workers to rejoin the group", "to work faster and where to work").   There is not a single allegation that Grant ever gave any direction to, or exercised any supervision over, any plaintiff on even a single occasion.

The only allegation that even hints at any control or direction exercised by Grant over Plaintiffs is the allegation that the Family Farm Corporation decided what crops to plant and when they should be harvested.  *Id.* at ¶70.  The law is clear, however, that "agricultural decisions" such as these do not amount to "control" for purposes of the FLSA or the AWPA. *E.g., Aimable v. Long and Scott Farms,* 20 F.3d 434, 441 (11th Cir.1994) (emphasis added). (direction, control or supervision only arises when "the alleged employer goes beyond *general instructions*, such as how many acres to pick in a given day, and begins to assign specific tasks, to assign specific workers, or to take an overly active role in the oversight of the work . . . [and a]gricultural decisions -- decisions which only indirectly affect [ ] the

12

number of workers necessary to harvest the land -- cannot be likened to 'control' in the FLSA/AWPA sense"); *Martinez-Mendoza,* 340 F.3d at 1209-10 ("[a]n alleged employer takes an 'overly active' role when it decides such things as (1) for whom and how many employees to hire; (2) how to design the employees' management structure; (3) when work begins each day; (4) when the laborers shall start and stop their work throughout the day; and (5) whether a laborer should be disciplined or retained").

Accordingly, no allegations are made by Plaintiffs that could support a finding that Grant was an employer based on this factor.

    b.    Power to hire, modify working conditions, set wage rates and method of payment.

The Complaint is consistent in alleging that the Contractor Defendants were solely responsible for hiring Plaintiffs, determining where and what hours they would work, what their off-hour accommodations would be, what their wages would be and what things would be deducted from them, and in determining the method of wage payment. Complaint at ¶45 (Contractor Defendants "arranged temporary housing"), ¶34, (Contractor Defendants bought and operated the migrant housing where Plaintiffs' lived); ¶¶72-3 (Contractor Defendants "kept the workers in the fields until at least 6:00 p.m. every day") ¶79 (Contractor Defendants' "took care of paying the workers . . . and handled the bookkeeping").

Not a single allegation is made that Grant played any role whatsoever in any of this activity (and, it is highly unlikely that he could have even if he wanted to given the fact that Plaintiffs allege that they were directed by the Contractor Defendants to work at farms other than the farm operated by the Family Farm Corporation, *id.* at ¶65).

No allegations are made that support a finding that Grant was an employer based on this factor.

      c.      Permanency and duration of the relationship.

The Complaint alleges that Plaintiffs were employed by Grant and the Contractor Defendants for only a single, seven-month period. Complaint at ¶9. Even during this short time, the Complaint alleges that Plaintiffs worked at farms other than the farm operated by the Family Farm Corporation. *Id.* at ¶65. Both these allegations are inconsistent with finding an employment relationship based on permanency and duration. *Compare Migrant and Seasonal Agricultural Worker Protection Act*, 62 Fed.Reg. at 11,740 (where a labor contractor and its workers are engaged for the duration of the operation and are obligated to work exclusively for the employer at its discretion, this factor would suggest economic dependence).

      d.      Repetitive nature of activities and skill required.

The Complaint specifically alleges that Plaintiffs were required to pick weeds, Complaint at ¶63, but it is reasonable to infer from other allegations in the Complaint that Plaintiffs also planted and harvested crops. Grant concedes that these activities do not require extensive skill or training. Thus, while it is "difficult[ to] discern[] the probative value of this factor in resolving, one way or the other, the issue of joint employment", *Martinez-Mendoza,* 340 F.3d at 1331 n. 33, these allegations could support a finding of joint employment.

> e.  Whether worker activities are an integral part of the overall business operation.

The next factor is "whether the activities performed by the worker are an integral part of the *overall business operation of the agricultural employer*." *Martinez-Mendoza,* 340 F.3d at 1209 (emphasis added). For purposes of this motion to dismiss, which is filed solely on behalf of Andrew Grant, the term "agricultural worker" refers to Andrew Grant and not his corporate employer, Grant Family Farms. To the extent the Complaint is construed to allege or infer that Plaintiffs picked weeds and planted and harvested crops, these allegations might lend some support to a finding that the Family Farm Corporation was a joint employer of Plaintiffs. However, because the Complaint makes no allegations about the activities performed by Grant individually, there is no basis to infer that any of Plaintiffs' activities were integral to the functions performed by Grant.

> f.  Whether the work is performed on the alleged employer's premises.

According to the Complaint, Plaintiffs worked on the farm run by the Family Farm Corporation and on other farms. Complaint at ¶65. The Complaint nowhere alleges that Grant, as opposed to the Family Farm Corporation, owned the land that Plaintiffs' worked. As such, there are no allegations in the Complaint that support a finding that Grant was an employer based on this factor.

> g.  Whether the alleged employer prepares payroll records, issues pay checks, pays FICA taxes, or provides housing or transportation.

15

As noted previously, the Complaint is consistent and unambiguous in alleging that the preparation of payroll records, the preparation and issuance of paychecks, and the providing of housing and transportation were all performed solely by the Contractor Defendants. The Complaint also alleges that the Contractor Defendants withheld payroll taxes from Plaintiffs. Complaint at ¶¶81-2. The Complaint says nothing about insurance, field sanitation, or providing of tools (other factors relevant to this inquiry).

Thus, none of the allegations in the Complaint support a finding, under this factor, that Grant was an employer of Plaintiffs. Indeed, all of the allegations support the opposite conclusion.

\*   \*   \*

In sum, the allegations in the Complaint furnish absolutely no support to most of the factors that are to be considered under the "economic reality" test in determining whether a plaintiff can establish a joint employer relationship, although admittedly, some allegations to furnish some support for a couple of those factors. It is worth noting, however, that the allegations in the Complaint that are supportive of a joint employer relationship are allegations that could be made in virtually any case involving agricultural field workers, *to wit,* because agricultural field workers plant, tend to, and harvest crops, those workers are involved in relatively low-skilled labor, the work they perform is integral to farming, and their jobs require that they work the land controlled by farmers.

In the absence of any allegations which support the conclusion that Grant was an employer of Plaintiffs – beyond these nearly universal attributes of agricultural field workers – Plaintiffs have alleged no basis upon which to hold Grant individually liable for alleged violations of the FLSA or AWPA on grounds that he was the "employer" of Plaintiffs.

*Compare Zavala v. Wal-Mart Stores, Inc.*, 393 F.Supp.2d 295, 330-31 (D.N.J.2005) (denying defendant's motion to dismiss on grounds that complaint alleged: "all of the named plaintiffs have worked at various Wal-Mart stores"; "[p]laintiffs allege that Wal-Mart exercised the power to hire and fire plaintiffs, controlled their wages, hours and working conditions, as well as the quality standards governing their work"; "plaintiffs did not work for any entities other than Wal-Mart in any significant capacity"; and "[p]laintiffs also allege that on-site managers recorded the time and costs associated with maintenance functions, and forwarded along such information on a regular and periodic basis to Wal-Mart headquarters") (internal quotations omitted); *Vega v. Contract Cleaning Maintenance, Inc.*, 2004 WL 2358274 at *7 (N.D.Ill. Oct. 18, 2004) (denying motion to dismiss where, "[p]laintiffs allege that they worked regularly on UPS's premises and that UPS set their work hours, gave detailed work assignments, supervised their work and maintained records of the hours they worked").

## CONCLUSION

Plaintiffs' Complaint does not contain a single allegation that could support piercing the corporate veil and holding Grant individually liable for the conduct of the Family Farm Corporation. Similarly, that allegations that are made in the Complaint almost uniformly support the conclusion that Contractor Defendants were the employers of Plaintiffs, and there are virtually no well-pled allegations that could support the conclusion that Grant and the Contractor Defendants were "joint employers" of Plaintiffs.

Thus, Andrew Grant respectfully requests that this Court enter an Order dismissing with prejudice the claims that Plaintiffs have advanced against him.

Respectfully submitted this 13th day of October, 2006.

    s/ Patrick L. Ridley
_____
Patrick L. Ridley
Robert F. Fishman
Ridley, McGreevy & Weisz, P.C.
1800 15th Street, Suite 101
Denver, CO 80202
(303)629-9700
(303)629-9702 – facsimile
ridley@rmwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2006, I served a true and correct copy of the foregoing **MOTION TO DISMISS** via the USDC CM/ECF system to the following:

Patricia Medige
Colorado Legal Services
pmedige@colegalserv.org

    s/ Erin C. McCormick
_____
Erin C. McCormick