## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00805-LTB

JOHN DOES I-V,

      Plaintiffs,

v.

MOISES RODRIGUEZ, individually, and in his official capacity,
      a/k/a MOISES RODRIGUEZ-TENA
      a/k/a MOISES TENA RODRIGUEZ,

MARIA RODRIGUEZ, individually, and in her official capacity,

ANDREW L. GRANT, individually, and in his official capacity, and

GRANT FAMILY FARMS, Inc., a Colorado corporation.

      Defendants.

---

### PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

---

## I.      INTRODUCTION

1.      Due to the sensitive nature of this case, and the heightened privacy interests involved, Plaintiffs are seeking leave to proceed anonymously, the subject of a pending motion, 06-MC-17-EWN.  Hence, they are identified as John Does I through V.

2.      Plaintiffs (hereinafter "Plaintiff Workers") bring this case against Defendant farm labor contractors MOISES RODRIGUEZ and MARIA RODRIGUEZ, (hereinafter "Contractor Defendants") who held them in debt bondage and forced labor during the growing season of 2004. Plaintiffs were jointly employed by Colorado growers ANDREW L. GRANT and GRANT FAMILY FARMS (hereinafter "Grower Defendants").

3.      Plaintiff Workers complain that Defendants routinely failed to pay Plaintiff Workers the federal minimum wage, as required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

4.      Plaintiff Workers complain of numerous violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.*, by all Defendants as joint employers as defined at 29 C.F.R. § 500.20(h).  These include: (1) housing the Plaintiff Workers in unsafe and overcrowded labor camps;  (2) failing to disclose in writing the terms and conditions of employment at the time of recruitment; (3) providing false and misleading information to the Plaintiff Workers at the time of recruitment; (4) failing to comply with a working arrangement entered into with Plaintiff Workers; (5) failing to provide Plaintiff Workers with accurate wage statements; (6) failing to maintain accurate payroll records; (7) failing to pay the Plaintiff Workers for all hours worked; (8) transporting Plaintiff Workers in unsafe vehicles; (9) failing to post the required information at the farm labor camp; (10) failing to register as a farm labor contractor and securing the services of unregistered and/or improperly registered farm labor contractors; and (11) housing, transporting and driving Plaintiff Workers when not authorized to do so under the AWPA.

5.     Contractor Defendants also engaged in a pattern of racketeering activity in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*  Contractor Defendants held Plaintiff Workers in forced labor, and trafficked them into servitude in violation of the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), 18 U.S.C. § 1589 *et. seq.* and held them in involuntary servitude in violation of the Thirteenth Amendment of the U.S. Constitution, 18 U.S.C. § 1581, 18 U.S.C. § 1584, 42 U.S.C. § 1994.

6.     Grower Defendants benefited from the farm labor that the Plaintiff Workers provided as a result of Defendants' violations of law, including debt bondage, involuntary servitude and fraudulently induced employment. Under Colorado law, Grower Defendants were unjustly enriched at the expense of the Plaintiff Workers.

## II.     JURISDICTION

7.     The jurisdiction of this court is invoked pursuant to 29 U.S.C. § 1854(a), this action arising under the AWPA; by 18 U.S.C. § 1964, this action arising under the RICO; by 29  U.S.C. § 216(b), this action arising under the FLSA; by 18 U.S.C. § 1589, this action arising under the TVPRA;  by 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce; by 28 U.S.C. § 1331, this action involving questions of federal law.

8.     Supplemental jurisdiction over any state law claims is conferred upon this Court by 29 U.S.C. § 1367(a) as these claims arise out of the same nucleus of facts that support the federal claims.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1854(a).  Upon information and belief, Defendants' unlawful employment practices were committed in the District of Colorado, and all Defendants resided in the District of Colorado at all relevant times.

10.     This Court has personal jurisdiction over Contractor Defendants and Grower Defendants because Defendants have had continuous and systematic contacts with, and have conducted business in, Colorado, such that Defendants have purposefully availed themselves of the benefits of the laws of Colorado.  Additionally and/or alternatively, Plaintiff Workers claims arise from or relate to Defendants' specific contacts and activities within Colorado and/or commission of crimes or torts in whole or in part in Colorado.


## III.    PARTIES

**Plaintiffs**

11.     Plaintiff Workers were employees of the Contractor Defendants and Grower Defendants during the period from April 2004 through October 2004.

12.     At all relevant times, Plaintiff Workers were migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A) in that at all times relevant to this action they were employed in agricultural employment of a seasonal or other temporary nature and were required to be absent from their permanent places of residence.

13.     At all relevant times, Plaintiff Workers were engaged in agricultural employment within the meaning of the AWPA, 29 U.S.C. § 1802(3).

14.     At all relevant times, Plaintiff Workers were employed in the production of goods for sale in interstate commerce.

15.     At all relevant times, Plaintiff Workers were employees of Contractor Defendants and Grower Defendants within the meaning of the FLSA.

16.     Plaintiff Workers respectfully request that they be permitted to omit their addresses from this Complaint, for the reasons set forth in the aforementioned Motion for Leave to Proceed Anonymously.

17.     Plaintiff John Doe I is an adult male who at all times relevant, while employed by Defendants, was a citizen of Mexico and resided in Weld County, Colorado at the farm labor camp of Contractor Defendants.

18.     Plaintiff John Doe II is an adult male who at all times relevant, while employed by Defendants, was a citizen of Mexico and resided in Weld County, Colorado at the farm labor camp of Contractor Defendants.

19.     Plaintiff John Doe III is an adult male who at all times relevant, while employed by Defendants, was a citizen of Mexico and resided in Weld County, Colorado at the farm labor camp of Contractor Defendants.

20.     Plaintiff John Doe IV is an adult male who at all times relevant, while employed by Defendants, was a citizen of Mexico and resided in Weld County, Colorado at the farm labor camp of Contractor Defendants.

21.     Plaintiff John Doe V is an adult male who at all times relevant, while employed by Defendants, was a citizen of Mexico and resided in Weld County, Colorado at the farm labor camp of Contractor Defendants.

**Defendants**

22.     At all relevant times, all Defendants were agricultural employers within the meaning of the AWPA, 29 U.S.C. § 1802(2).

23.     At all relevant times, all Defendants were joint employers as defined at 29 C.F.R. § 500.20(h).

24.     At all relevant times, Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ, of 657 Birch Street, Hudson, Weld County, Colorado, were farm labor contractors within the meaning of the AWPA, 29 U.S.C. § 1802(7), in that, for a fee, they recruited, solicited, hired, transported, and housed Plaintiff Workers.

25.     Prior to their arrests in October 2005 and subsequent detention without bond, Contractor Defendants routinely did business within the District of Colorado. *See,* related criminal case, *U.S. v. Rodriguez et al.,* 05-CR-00448-EWN (D. CO Oct. 20, 2005).

26.     At all relevant times, the Contractor Defendants employed Plaintiff Workers.

27.     At all relevant times, the Contractor Defendants were an enterprise engaged in a pattern of racketeering activity within the meaning of the RICO, 18 U.S.C. § 1961.

28.     At all relevant times, the Contractor Defendants were "persons" within the meaning of the RICO, 18 U.S.C. § 1961.

29.     At all relevant times, Contractor Defendants were engaged in an industry affecting commerce.

30.     Grower Defendant ANDREW L. GRANT, of 1017 W. County Road 72, Wellington, Larimer County, Colorado, 80549, was an employer or joint employer of Plaintiff Workers within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

31.     Grower Defendant ANDREW L. GRANT also is President and registered agent for Grower Defendant GRANT FAMILY FARMS, of Wellington, Colo.

32.     Grower Defendant GRANT FAMILY FARMS, 1020 W. County Road 72, Wellington, Larimer County, Colorado 80549, is a Colorado corporation.

33.     Grower Defendant GRANT FAMILY FARMS was an employer or joint employer of Plaintiff Workers within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

34.      At all relevant times, Defendants engaged in some or all of the following operations: growing, harvesting, grading, processing, packing, repackaging and selling vegetables and herbs for sale in interstate commerce.


IV.     **FACTUAL ALLEGATIONS**

35.     Upon information and belief, Contractor Defendant MOISES RODRIGUEZ has operated a farm labor camp in Weld County, Colorado, since approximately 1995.

36.     Contractor Defendant MOISES RODRIGUEZ purchased a home at 657 Birch St., Hudson, CO  80642 on Oct. 15, 1999 at which he and Contractor Defendant MARIA RODRIGUEZ lived and conducted business until their arrest in October 2005.

37.     On January 18, 2001, Contractor Defendant MOISES RODRIGUEZ purchased property at 22185 Highway 52, Hudson, CO  80642 (the "Highway 52 compound").

38.     The property on Highway 52 contains at least two, two-story buildings that Contractor Defendants utilized as migrant housing.

39.     During 2004, Contractor Defendant MOISES RODRIGUEZ was not registered with the U.S. Department of Labor as a Farm Labor Contractor, as required under federal law.

40.     On April 1, 2004, Contractor Defendant MARIA RODRIGUEZ obtained a Farm Labor Contractor Certificate of Registration #C-06-557652-L-05R, expiring Dec. 31, 2005.

41.     However, the Farm Labor Contractor Certificate of Registration issued to Contractor Defendant MARIA RODRIGUEZ on April 1, 2004, did not authorize her to transport, house or drive workers.

42.     Grower Defendant GRANT FAMILY FARMS Inc., was incorporated in the state of Colorado on May 5, 1998.

43.     According to state records, the corporation's Registered Agent is Grower Defendant ANDREW L. GRANT.  ANDREW L. GRANT also serves as company President.

44.     As President of Defendant GRANT FAMILY FARMS, Defendant ANDREW L. GRANT at all relevant times had day-to-day operational control of the business.

45.     Grower Defendants ANDREW L. GRANT and GRANT FAMILY FARMS established a supervisory structure in which ANDREW L. GRANT oversaw "foremen" named Ruben and Felipe.  These individuals in turn supervised and instructed Contractor Defendants.

46.     Thus, Defendant ANDREW L. GRANT at all relevant times had ultimate control over farm employees, including the decision over who worked at the farm.

47.     According to state records, Grower Defendant ANDREW L. GRANT's address as registered agent is 1017 W. County Road 72, Wellington.

48.     According to state records, the Principal Office of Grower Defendant GRANT FAMILY FARMS, Inc. is 1029 WCR 72, Wellington, Colo.

49.     In or around March, 2004, Contractor Defendants began recruiting workers in Mexico to come to Colorado to work in agriculture during the upcoming growing season.

50.     Contractor Defendant MOISES RODRIGUEZ communicated by telephone from Colorado with one or more third-party recruiters in Mexico in order to locate workers to come to Colorado.

51.     During April, May and June, 2004, Contractor Defendant MOISES RODRIGUEZ made arrangements via these agents for the groups to travel to the U.S.-Mexico border, to cross the border without inspection by U.S. authorities and to travel to Phoenix, Ariz. where he arranged temporary housing.

52.     For example, Contractor Defendant MOISES RODRIGUEZ instructed the groups to stay at a specified hotel on the Mexican side of the border and to ask for a certain individual, who would oversee the arrangements for their crossing.

53.     Contractor Defendant MOISES RODRIGUEZ, then personally traveled from Hudson, Colo. to Phoenix on several occasions to pick up workers.  On one such occasion,

workers, including Plaintiffs JOHN DOE III and IV, observed Contractor Defendant MOISES RODRIGUEZ handing money to the smuggler who had brought the workers across the border.

54.     From Phoenix, Contractor Defendant MOISES RODRIGUEZ or his designees transported workers to the Highway 52 compound.

55.     Upon information and belief, Contractor Defendant MOISES RODRIGUEZ or his designees traveled to Phoenix for the sole purpose of taking control of the workers, including Plaintiff Workers.

56.     When he made contact with the workers, Contractor Defendant MOISES RODRIGUEZ did not provide any written disclosures of the terms and conditions of employment as required under the AWPA.

57.     While traveling from Phoenix to the Highway 52 compound, Contractor Defendant MOISES RODRIGUEZ forced the workers to lie down in the back of his vehicle so that they could not be viewed from the outside of the vehicle. The vehicle would stop only for gasoline and the workers were unable to leave the vehicle to eat or use the restroom.

58.     Plaintiff Workers traveled for more than one dozen hours lying down in the back of the vehicle, with no seatbelts or other safety measures taken.

59.     Contractor Defendant MOISES RODRIGUEZ furnished the labor of Plaintiff Workers to Grower Defendants.

60.     Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ had provided this labor to Grower Defendants for several years and had a long and sustained business relationship with them.

61.     The labor provided by the Plaintiff Workers was an integral part of the business operation of the Grower Defendants.

62.     Thus, Contractor Defendants engaged in this recruitment, transporting and harboring activity with the objective of furnishing them to Defendant Growers.

63.     Upon information and belief, Contractor Defendants engaged in this recruitment, transporting and harboring activity while under contract with Grower Defendants.

64.     Plaintiff Workers arrived at the Highway 52 compound on various dates between April 2004 and June 2004.

65.     The Highway 52 compound was not registered and inspected properly during 2004, in violation of federal and state laws.

66.     Approximately 40 workers lived in the compound, with four-to-six workers in each unit.  Some people had to sleep on the floors.

67.     The water in the camp was not drinkable.  Plaintiff Workers were told the water had made people sick in the past so they drank only bottled water.

68.     The compound contained a bath house with only two showers for all the men. Usually only one toilet in the bathhouse was working, out of four.  Inside the units, the beds and kitchens were infested with insects.  Each night the workers received insect bites as they slept.

69.     When each worker arrived at the Highway 52 compound, Contractor Defendant MOISES RODRIGUEZ informed them that they each owed him $1,300 in smuggling fees.  He further stated they would not be permitted to leave his employ until they paid that debt.

70.     Contractor Defendant MOISES RODRIGUEZ instructed the workers to behave so that the camp would not come to the attention of police.

71.     Contractor Defendant MOISES RODRIGUEZ served as landlord, supervisor and "coyote" or smuggler, and thus exercised enormous power and control over the workers.

72.     Six or seven days a week, the workers were transported some 60 to 90 minutes each way, in a yellow school bus, to Grower Defendants' farm in Wellington, Colo.

73.     Upon information and belief, Grower Defendants' operate an organic farm.  Thus in the purported absence of pesticides, Plaintiff Workers continually were engaged in back-breaking work weeding the fields of Grower Defendants.

74.     Plaintiff Workers also harvested numerous crops in the fields owned or leased by the Grower Defendants, including broccoli, cilantro, squash, onions and tomatoes.

75.     Occasionally, Contractor Defendant MOISES RODRIGUEZ brought Plaintiff Workers to work at other farms.  However the vast majority of their workdays were spent in the fields of Grower Defendants.

76.     Contractor Defendant MOISES RODRIGUEZ employed a foreman named German Juarez who transported the workers to the fields owned or leased by the Grower Defendants in a yellow school bus.

77.     Contractor Defendant MOISES RODRIGUEZ traveled to the fields of the Grower Defendants separately in his own passenger vehicle.  He sat in his vehicle and watched the workers in the fields through binoculars, supervising their work as he was paid to do by the Grower Defendants.

78.     When a worker would stray from the rest of the group, Contractor Defendant MOISES RODRIGUEZ called foreman German Juarez on a walkie-talkie to tell Juarez to force the worker to rejoin the group.  The Plaintiff Workers believed he watched them to prevent them from escaping.

79.     Contractor Defendant MOISES RODRIGUEZ also would call Juarez on the walkie-talkie to tell the workers to work faster and where to work, as he was paid to do by the Grower Defendants.

80.     While Contractor Defendant MOISES RODRIGUEZ oversaw the workers in the fields, Grower Defendants decided which crops would be planted and when they would be harvested.

81.     Contractor Defendant MOISES RODRIGUEZ regularly consulted with Grower Defendants, including Grower Defendant ANDREW GRANT and other representatives, in the course of the workday.

82.     Specifically, two individuals who served as foremen for Grower Defendants, named "Felipe" and "Ruben," frequently visited Contractor Defendant MOISES RODRIGUEZ in the fields to provide instructions.  Felipe, Ruben and the Contractor Defendants acted at the direction and/or under the supervision of the Grower Defendants.  Upon information and belief, on their own and through Felipe and Ruben, Defendants actually participated in, and benefited from, the wrongful acts complained of herein.

83.   Upon information and belief, equipment used on the farm, including that used to take wrongful actions against Plaintiff Workers was owned by, or leased by, Grower Defendants ANDREW L. GRANT and GRANT FAMILY FARMS.

84.   Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ provided only small hand tools, such as clippers.

85.   Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ made no decisions about planting dates, harvest dates, crop rotation, or organic techniques.  Upon information and belief, only Grower Defendants made these essential business decisions — the business decisions around which the wrongful actions complained of were planned and carried out against Plaintiffs.

86.   Upon information and belief, Grower Defendants ANDREW L. GRANT and GRANT FAMILY FARMS bore the financial risks of the farm operation and, in turn, received its profits.

87.   Upon information and belief, Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ made no financial investment in Grower Defendant GRANT FAMILY FARMS' real property, crops or equipment.

88.   Contractor Defendant MOISES RODRIGUEZ kept the workers in the fields owned or leased by Grower Defendants until at least 6:00 p.m. every day.  Thus often they would not return to the Highway 52 compound until after 8:00 p.m.

89.   Plaintiff workers were either traveling or working from approximately 4:30 a.m. until 8:00 p.m.  Thus they had very little contact with the outside world.

90.     At night in the camp, Contractor Defendant MOISES RODRIGUEZ regularly drove around the perimeter of the compound to prevent the workers from leaving.  The compound was surrounded by a chain link fence. The driveway to the camp was a long rutted dirt road that was muddy and impassable after it rained.

91.     On several occasions Contractor Defendant MOISES RODRIGUEZ told workers he would find them if they tried to leave the camp.  The workers heard stories about individuals who had been tracked down to other states after fleeing the camp. Plaintiff Workers  also believed that if they fled, their coworkers would be forced to pay off their debts.

92.     Contractor Defendant MOISES RODRIGUEZ carried a firearm to the fields owned or leased by Grower Defendants with him and on at least one occasion discharged the weapon in front of the workers to demonstrate that it worked.

93.     Foreman German Juarez and his wife, Marta, also lived on the compound. It was widely known that Marta spied on the workers and reported their activities to Contractor Defendant MOISES RODRIGUEZ.

94.     Workers were paid twice per month.

95.     Upon information and belief, Contractor Defendant MARIA RODRIGUEZ  paid the Plaintiff Workers with money she received from the Grower Defendants for Plaintiff Workers' labor in the fields of Grant Family Farms;  she drafted their checks and handled the bookkeeping of the operation.

96.     Workers soon learned that Contractor Defendants were making numerous unauthorized and illegal deductions from their pay.  Upon information and belief, the Grower Defendants knew of, condoned, and benefited from, these and other wrongful actions.

97.     For example, a pay statement provided to the workers included the following deductions noted:  rent charges of $50 twice per month; charges for ride to work of $48 twice a month:  bathroom cleaning charges, although the bathrooms were filthy; a deposit for clippers, rain gear, or knives for work; Social Security and the ongoing total of smuggling fees owed.

98.     The deductions for Social Security appeared to be completely fabricated, since the workers did not provide Social Security numbers to the Defendants, nor were numbers assigned to the workers.  Based on information and belief, these biweekly charges of $30 to $60 per worker for Social Security were never paid into the Social Security system.

99.     The pay statements provided to the Plaintiff Workers routinely "rounded-down" the number of hours worked.  For example, during the thirteen days worked, according to one pay statement, ten of the days were exact twelve-hour days, which is highly improbable, especially in agriculture.  An unknown number of hours each week were unpaid due to this underreporting of hours worked.

100.     Since the Plaintiff Workers did not possess identification cards, they could not cash checks.  Thus Contractor Defendant MARIA RODRIGUEZ charged the workers a one percent "check-cashing fee" and then paid the workers in cash.

101.     As a result, for their work in the fields of the Grower Defendants, Plaintiff Workers were paid much less than the minimum wage of $5.15 per hour mandated by the FLSA and the

$5.25 promised by Contractor Defendant MOISES RODRIGUEZ.   On some weeks they were paid as little as $2.90 per hour for more than 60 hours of work. At recruitment, Plaintiff Workers were never informed of the many deductions and never consented to them.

102.     Since Contractor Defendants had agents back in Mexico, Plaintiff Workers believed that Contractor Defendants would retaliate against their family members should they attempt to assert their rights.

103.     Contractor Defendants exercised coercion over the Plaintiff Workers in numerous ways, principally exploiting their fear that Contractor Defendant MOISES RODRIGUEZ or his agents would physically harm them or their families.  The workers also feared that their coworkers would be punished for their conduct.

104.     Upon information and belief, Grower Defendants knew of, willfully ignored, and condoned as part of the operations they oversaw and in which they were involved, the abuse of the workers, apparently turning a blind eye to the mistreatment.  Nevertheless, Grower Defendants are responsible for FLSA and AWPA violations as joint employers.

105.     Contractor Defendant MOISES RODRIGUEZ regularly consumed alcohol in excess.  When he did so, he became verbally abusive toward the workers, using extremely foul language at them and waving his gun around.

106.     Although Contractor Defendant MOISES RODRIGUEZ drank alcohol to excess, he prohibited the workers from bringing alcoholic beverages, even beer, onto the camp.  Plaintiff Workers believe he prohibited the alcohol in order to keep the workers docile.

107.    Contractor Defendant MOISES RODRIGUEZ demonstrated callous brutality toward the workers.  For example on occasion during work he would drive his truck off while a worker was climbing into the truck bed.  He would laugh when the worker then would fall onto the ground.

108.    Plaintiff Workers suffered great fear, suffering, humiliation and emotional distress. They suffered guilt because they were unable to provide for their families as intended.  They were anxious about the well-being of their families back home.

109.    Plaintiff Workers ultimately escaped from the camp late in the season and initiated the investigation that resulted in the arrest of Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ in October, 2005.

110.    Upon information and belief, on the day that Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ were arrested, Grower Defendant ANDREW L. GRANT called their home during the raid to ask why they had not arrived at work with the employees.  Federal agents answered the telephone, instead of the Contractor Defendants, whom Grower Defendant ANDREW L. GRANT had expected.  The federal agents told Contractor Defendant ANDREW L. GRANT that the crew would not be coming to work that day.

**THE RACKETEERING ACTS**

111.    In order to perpetuate a criminal worker exploitation scheme, the Contractor Defendants knowingly and willfully committed the following predicate offenses under Section 1961(1)(B) of the RICO, 18 U.S.C. § 1961(1)(B):

a.      Extortion in violation of 18 U.S.C. § 1951;

b.      Involuntary servitude in violation of 18 U.S.C. § 1584; forced labor in violation of

18 U.S.C. § 1589;

c.      Bringing in and harboring certain aliens in violation of 8 U.S.C. § 1324;

d.      Wire fraud in violation of 18 U.S.C. § 1343.


**VIOLATION OF 18 U.S.C. § 1951: EXTORTION:**

112.    The Contractor Defendants knowingly and willfully committed multiple predicate

acts of extortion in violation of 18 U.S.C. § 1951 by wrongfully using threatened force and fear, as

described in paragraphs 49-110, *supra*, to induce the Plaintiff Workers to abandon their property

rights to be paid in compliance with federal and state labor laws.

113.    The Contractor Defendants violated 18 U.S.C. § 1951 by intentionally (1) affecting

or attempting or conspiring to affect interstate commerce by (2) extortion of (3) Plaintiffs'

property rights to be paid in compliance with state and federal law.

114.    These acts of extortion in violation of 18 U.S.C. constitute "racketeering activity"

as defined in the RICO, 18 U.S.C. §1961(1).


**VIOLATION OF 18 U.S.C. § 1584: INVOLUNTARY SERVITUDE; § 1589: FORCED
LABOR**

115.    The Contractor Defendants willfully and continuously held Plaintiff Workers in

involuntary servitude in violation of 18 U.S.C. § 1584 and Forced Labor in violation of 18 U.S.C.

§ 1589 by threatening Plaintiffs with legal coercion, intimidation, and use of force, as described in

paragraphs 49-110, *supra*, to cause Plaintiff Workers to believe that they had no choice but to continue to work for Contractor Defendants.

116.    These acts of involuntary servitude in violation of 18 U.S.C. § 1584 and Forced Labor in violation of 18 U.S.C. § 1589 constitute "racketeering activity" as defined in the RICO, 18 U.S.C. § 1961(1).

## VIOLATION OF 8 U.S.C. § 1324: ACTS INDICTABLE UNDER THE IMMIGRATION AND NATIONALITY ACT ("INA"), RELATING TO BRINGING IN AND HARBORING CERTAIN ALIENS

117.    The Contractor Defendants knowing and in reckless disregard of the fact that an alien has come to, entered and remained in the U.S. in violation of law, did transport, move, harbor, shield from detection and employ such alien for financial gain in violation of 8 U.S.C. § 1324.

118.    These acts which are indictable under 8 U.S.C. § 1324, and under which Contractor Defendants have indeed been indicted constitute "racketeering activity" as defined in the RICO, 18 U.S.C. § 1961(1).

## VIOLATION OF 18 U.S.C. §§ 1341 AND 1343: WIRE FRAUD:

119.    Contractor Defendants knowingly and willfully devised a scheme to defraud Plaintiff Workers, and to obtain money or property from them by means of false or fraudulent pretenses, representations, or promises, as described in paragraphs 35-110, *supra.* The money or property obtained from Plaintiff Workers was the wages the Contractor Defendants were required by state and federal law to pay to the Plaintiff Workers, which were not paid.

120.     On information and belief, the Contractor Defendants knowingly and willfully used telephones to communicate with agents in Mexico and Phoenix and with each other, with the intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § § 1341 and 1343.

121.     Upon information and belief, these communications included, but were not limited to, telephone calls between Contractor Defendant MOISES RODRIGUEZ, Contractor Defendant MARIA RODRIGUEZ, foreman German Juarez, recruiters in Mexico, traffickers of undocumented immigrants in Mexico and Arizona and agents in Phoenix in April, May and June, 2004, for the purpose of arranging the scheme by which Plaintiff Workers were defrauded.

122.     It was reasonably foreseeable that the agents in Mexico and Arizona would use telephones to respond to the Contractor Defendants.  These communications furthered the fraudulent scheme.

123.     These acts of wire fraud in violation of 18 U.S.C. § 1584 constitute "racketeering activity" as defined in the RICO, 18 U.S.C. § 1961(1).


**THE RICO ENTERPRISE**

124.     The Contractor Defendants, their agents in Arizona and Mexico, and the Grower Defendants are a group of individuals associated in fact although not a legal entity, and therefore are an "enterprise" as defined in RICO, 18 U.S.C. § 1961(4).

125.     The Contractor Defendants, using their positions as operators of their farm labor contracting business, have made ongoing associations with two or more parties for the purpose of

executing essential aspects of the criminal worker exploitation scheme.  The Contractor Defendants formed an ongoing association with labor recruiters, the Mexico and Arizona traffickers, as well as with Grower Defendants, in order to commit the predicate acts set forth above.

126.    The Contractor Defendants could not successfully conduct the criminal worker exploitation scheme without the associations that formed this enterprise.

127.    The Contractor Defendants operated and managed the enterprise comprised of the Contractor Defendants, labor recruiters, the Mexico and Arizona traffickers, and the Grower Defendants.  They initiated and carried out a criminal worker exploitation scheme for the enterprise.  They directed the activities and managed the flow of information within the enterprise, for the purpose of advancing their scheme.

128.    The enterprise regularly moved goods and people across state lines and therefore was engaged in interstate commerce.

**PATTERN OF RACKETEERING ACTIVITY**

129.    The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined in RICO, 18 U.S.C. § 1961(5).  The Contractor Defendants repeatedly committed the RICO predicate acts of extortion, involuntary servitude and wire fraud.

130.    The predicate acts of criminal racketeering activity described above also were related in the following ways:

a.      They had common participants;

b.      They had the same victims (Plaintiff Workers);

c.      They had the same purpose (and result) of benefiting the Contractor Defendants at the expense of the Plaintiffs and other workers;

d.      They were interrelated in that, without the acts of wire fraud, or the harboring, the Contractor Defendants would not have held Plaintiff Workers in forced labor or extorted their rights to contractual and lawful wages.

131.    Such acts of racketeering activity have been part of the Contractor Defendants' regular way of doing business through the enterprise for a number of years and therefore show a threat of continued criminal activity.


**UNJUST ENRICHMENT**

132.    The consideration that the Plaintiff Workers received for their labor was dramatically below the fair value of their services and far below the benefit that the Grower Defendants received from their employment.

133.    As a result of fraud upon the Plaintiff Workers and other violations of law, the Grower Defendants unjustly benefited from their employment of the Plaintiff Workers at the expense of the Plaintiff Workers.

134.    The Grower Defendants appreciated and retained this benefit and thereby have been unjustly enriched.

## V.      SUSPENSION OF STATUTES OF LIMITATION

Under principles of equitable tolling, any statutes of limitations relating to the causes of action alleged in this complaint on behalf of the Plaintiffs should be tolled for the period of Plaintiffs' involuntary servitude and for a reasonable time period following their escape.  Plaintiffs were unaware of their rights and unable to seek appropriate remedies during that time.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION (COUNT I)

### (FAIR LABOR STANDARDS ACT)

### (All Defendants)

135.     Plaintiff Workers reallege and incorporate by reference the allegations set forth in paragraphs 1 through 134 as if set forth fully here.

136.     Contractor Defendants and, upon information and belief, Grower Defendants failed to pay minimum wages to Plaintiff Workers in violation of the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq.,* and its implementing regulations.

137.     Contractor Defendants' and, upon information and belief, Grower Defendants' violations of the FLSA were willful, in that the Defendants knew or showed reckless disregard for the issue of whether Defendants' conduct was prohibited under the FLSA.

138.     Contractor Defendants', and, upon information and belief, Grower Defendants'
failure to comply with the FLSA minimum wage protections caused Plaintiffs to suffer loss of
wages and interest thereon.

## SECOND CAUSE OF ACTION (COUNT II)

## MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT

## ALLEGATIONS AS TO ALL DEFENDANTS:

139.     Plaintiff Workers reallege and incorporate by reference the allegations set forth in
paragraphs 1 through 134 as if set forth fully here.

140.     By failing to provide the Plaintiffs at the time of recruitment with a written
disclosure of the terms and conditions of employment, the Contractor Defendants and  as joint
employers,  the Grower Defendants violated the AWPA, 29 U.S.C. § 1821(a).

141.     By failing to comply with a working arrangement, the Contractor Defendants and,
upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. § 1832(c).

142.     By knowingly giving false and misleading information to Plaintiffs, the Contractor
Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29
U.S.C. § 1831(e).

143.     By failing to pay Plaintiff Workers their wages when due, the Contractor
Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29
U.S.C. § 1822(a).

144.     By failing to make, keep and preserve complete payroll records for each of the
Plaintiffs, including records documenting accurately the hours worked, the basis on which wages

are paid, the Contractor Defendants and, upon information and belief, the Grower Defendants violated the APWA, 29 U.S.C. §§ 1821(d)(1), 1831(c)(1).

145.    By failing to provide each of the Plaintiff Workers with an accurate itemized pay statement meeting the requirements of the AWPA, the Contractor Defendants and, upon information and belief, the Grower Defendants violated the APWA, 29 U.S.C. §§ 1821(d)(2), 1831(c)(2).

146.    By transporting the Plaintiff Workers in unsafe vehicles, the Contractor Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. § 1841(b)(1)(A), and its implementing regulations, 29 C.F.R. §§ 500.104 and 500.105.

147.    The violations of the APWA as set forth in paragraphs 139 through 146 were the natural consequence of the conscious and deliberate actions of Contractor Defendants and, upon information and belief, the Grower Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

148.    The Defendants' failure to comply with the AWPA caused the Plaintiff Workers to suffer damages.

## ALLEGATIONS AS TO CONTRACTOR DEFENDANTS

149.    By housing the Plaintiff Workers in dwellings that did not comply with state and federal law, the Contractor Defendants violated the AWPA, 29 U.S.C. § 1823(a).

150.    Upon information and belief, by failing to post a current certificate of occupancy at the housing occupied by Plaintiff Workers, the Contractor Defendants violated the AWPA, 29 U.S.C. § 1823(b).

151.    Contractor Defendant MOISES RODRIGUEZ engaged in farm labor contracting activities without a valid certificate of registration in violation of the AWPA, 29 U.S.C. § 1811(a).

152.    Contractor Defendant MARIA RODRIGUEZ, while in possession of a certificate of registration, engaged in farm labor contracting activities that were not permitted under that registration, in violation of the AWPA, 29 U.S.C. § 1811(a).

153.    The violations of the AWPA as set forth in paragraphs 149 through 152 were the natural consequence of the conscious and deliberate actions of Contractor Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

154.    The Contractor Defendants' failure to comply with the AWPA caused the Plaintiff Workers to suffer damages.


## ALLEGATIONS AS TO GROWER DEFENDANTS

155.    Upon information and belief, Grower Defendants utilized the services of Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ without first taking reasonable steps to determine that these farm labor contractors possessed certificates of registration which was valid and which authorized the activity for which the contractor was utilized.  This violated the AWPA, 29 U.S.C. § 1842.

156.    Upon information and belief, the violations of the AWPA as set forth in paragraph 155 were the natural consequence of the conscious and deliberate actions of the Grower Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

157.    Upon information and belief, the Grower Defendants' failure to comply with the AWPA caused the Plaintiff Workers to suffer damages.

## THIRD CAUSE OF ACTION (COUNT III)

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (Contractor Defendants)

158.    Plaintiff Workers reallege and incorporate by reference the allegations set forth in paragraphs 1 through 134 as if set forth fully here.

159.    At all times relevant to this action, Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ were an enterprise that engaged in a pattern of racketeering activity.

160.    Contractor Defendants committed the following predicate acts set forth in the RICO, 18 U.S.C. § 1961(1)(B):  extortion in violation of 18 U.S.C. § 1951; involuntary servitude in violation of 18 U.S.C. § 1584; forced labor in violation of 18 U.S.C. § 1589; bringing in and harboring certain aliens in violation of 8 U.S.C. § 1324; wire fraud in violation of 18 U.S.C. § 1343.

161.    Plaintiff Workers suffered injury as a result of these acts of Contractor Defendants.

162.    As a result of the actions of Contractor Defendants, Plaintiff Workers suffered injuries and are entitled to an award of treble damages, costs and attorneys' fees, where permissible, as well as an injunction against future violations of the RICO.

## FOURTH CAUSE OF ACTION (COUNT IV)

**TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, FORCED LABOR, 18 U.S.C. § 1589, 1595**

**(Contractor Defendants)**

163.     Plaintiff Workers reallege and incorporate by reference the allegations set forth in paragraphs 1 through 134  as if set forth fully here.

164.     The Forced labor provision of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589, establishes that whoever knowingly provides or obtains the labor or services of a person  (1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (3) by means of the abuse or threatened abuse of law or the legal process shall be fined or imprisoned not more than 20 years, or both. 18 U.S.C. § 1589.

165.     Defendant Contractors knowingly arranged for the recruitment, transportation, and unlawful entry of Plaintiff Workers.  They further knowingly provided the services of Plaintiff Workers to Defendant Growers.

166.     Contractor Defendants obtained Plaintiff Workers' services through threats of harm, extraordinary levels of control, and a scheme of intimidation and abuse that led Plaintiff Workers to believe that they or others would suffer serious harm or physical restraint if they did not perform the work.  Specifically, Contractor Defendant MOISES RODRIGUEZ' aggressive behavior, flourishing of a firearm, patrolling of the camp, use of spies on the camp and constant

observation of the workers in the field caused Plaintiff Workers to believe they could not leave his employment.

167.     Contractor Defendants MOISES RODRIGUEZ and MARIA RODRIGUEZ, by imposing a serious of indeterminate and seemingly insurmountable debts, and telling the workers they could not leave without paying those debts, created a situation of debt bondage and fear they or their family members would suffer retaliation if they attempted to leave.

168.     Contractor Defendants knowingly obtained Plaintiff Workers' services by means of the abuse or threatened abuse of the legal process.

169.     Contractor Defendants used force, explicit and implied threats and other intimidation to hold Plaintiff Workers in captivity and force them to work without paying them the compensation required by law.

170.     As a result of Contractor Defendants' conduct, Plaintiff Workers have suffered injuries.

171.     Pursuant to 18 U.S.C. § 1595, Plaintiff Workers are entitled to bring a civil action and recover damages and reasonable attorneys' fees for Contractor Defendants' wrongful conduct.

## FIFTH CAUSE OF ACTION (COUNT V)

**TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, TRAFFICKING INTO SERVITUDE, 18 U.S.C. § 1590, 1595**

### (Contractor Defendants)

172.     Plaintiff Workers reallege and incorporate by reference the allegations set forth in paragraphs 1 through 134 as if set forth fully here.

173.    The Trafficking into servitude provision of the TVPRA, 18 U.S.C. § 1590, provides

that: recruiting, harboring, transporting, providing, or obtaining by any means any person for labor

or services in violation of laws prohibiting slavery, involuntary servitude, debt bondage or forced

labor shall subject defendant to fines or imprisonment, or both.

174.    Pursuant to 18 U.S.C. § 1595, Plaintiff Workers are entitled to bring a civil action

and recover damages and reasonable attorneys' fees, for Contractor Defendants' wrongful

conduct.

175.    Contractor Defendants knowingly recruited Plaintiff Workers in Mexico, arranged

for their transportation to the U.S. and Hudson, Colo., harbored and, in fact, held them in the

Highway 52 compound, and provided their labor and services to Grower Defendants ANDREW L.

GRANT and GRANT FAMILY FARMS.

176.    Contractor Defendants' scheme to hold Plaintiff Workers in debt bondage was so

blatant that the various debts were listed on otherwise inaccurate pay statements provided to the

workers.

177.    As a result of Contractor Defendants' conduct, Plaintiff Workers have suffered

injuries.


**SIXTH CAUSE OF ACTION (COUNT VI)**

**UNJUST ENRICHMENT**

**(Grower Defendants)**

178.    Plaintiff Workers reallege and incorporate by reference the allegations set forth in paragraphs 1 through 134 as if set forth fully here.

179.    Plaintiff Workers have provided a valuable benefit to the Grower Defendants, which was accepted and enjoyed by the Grower Defendants.  Namely, the Grower Defendants have realized cost-savings, conducting their agricultural operations at a low cost to themselves as a result of the Plaintiff Workers' debt bondage, involuntary servitude, fraudulently induced employment and other violations of law suffered by the Plaintiff Workers.

180.    The benefits the Grower Defendants have enjoyed have come directly at the expense of the Plaintiff Workers who were fraudulently induced into employment, trafficked into servitude, intimidated into remaining in their labor camps, and forced into working long days in the fields of the Grower Defendants for less than the payment Plaintiff Workers were entitled to receive under applicable law.

181.    As a result of their employment of Plaintiff Workers in violation of law, the Grower Defendants incurred lower labor costs than they would have incurred for the same services if they had employed other workers who were not being employed in violation of law.

182.    It would be unjust for the Grower Defendants to retain the benefits they have received without compensating the Plaintiff Workers.


**VII.   JURY TRIAL DEMAND**

183.    Plaintiffs hereby demand a jury trial on all issues so triable.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this court enter an order:

a.      Declaring that the Defendants as joint employers have intentionally violated the FLSA and its implementing regulations as set forth in Count I;

b.      Granting judgment in favor of Plaintiff Workers and against Defendants on the FLSA claims as set forth in Count I, and awarding each of the Plaintiff Workers their unpaid minimum wages and an equal amount in liquidated damages;

c.      Declaring that all Defendants as joint employers have intentionally violated the AWPA and its implementing regulations as set forth in Count II;

d.      Granting judgment in favor of Plaintiff Workers and against Defendants on claims brought under the AWPA as set forth in Count II, and awarding each of the Plaintiff Workers the greater of his or her actual damages or statutory damages of $500 for each violation of the APWA and its implementing regulations;

e.      Declaring that the Contractor Defendants have intentionally violated the RICO as set forth in Count III;

f.      Granting judgment in favor of Plaintiff Workers and against Contractor Defendants on claims brought under the RICO as set forth in Count III, and awarding each Plaintiff Worker treble damages.

g.      Declaring that the Contractor Defendants have knowingly and intentionally violated the TVPRA, 18 U.S.C. § 1589, and its prohibition on forced labor.

h.      Granting judgment in favor of Plaintiff Workers and against Contractor Defendants on claims brought under the TVPRA, 18 U.S.C. § 1589, as set forth in Count IV, and awarding Plaintiff Workers actual damages, punitive and exemplary damages, as well as attorneys' fees, where permissible;

i.      Declaring that Contractor Defendants have knowingly and intentionally violated the TVPRA, 18 U.S.C. § 1590, and its prohibition on trafficking into servitude.

j.      Granting judgment in favor of Plaintiff Workers and against Contractor Defendants on claims brought under the TVPRA, 18 U.S.C. § 1590, as set forth in Count V, and awarding Plaintiff Workers actual damages, punitive and exemplary damages, as well as attorneys' fees, where permissible;

k.      Granting judgment in favor of Plaintiff Workers and against Grower Defendants on claims of unjust enrichment, as set forth in Count VI, and awarding Plaintiff Workers an amount that the Court deems just and equitable.

l.      Awarding Plaintiff Workers pre- and post-judgment interest;

m.      Awarding the Plaintiff Workers the costs of this action;

n.      Awarding other punitive and exemplary damages in an amount to be proven at trial;

o.      Awarding compensatory and special damages in an amount to be proven at trial;

p.      Granting such further relief as this Court deems just and equitable.

Dated this 2d day of November, 2006.

/s Patricia Medige
Patricia Medige
COLORADO LEGAL SERVICES
1905 Sherman Street, Ste. 400
Denver, CO 80203-1811
Telephone: (303) 866-9385
FAX:  (303) 830-7860
E-mail: pmedige@colegalserv.org
Attorney for Plaintiffs

**Certificate of Service**

I hereby certify that on November 2, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail address:

Patrick L. Ridley
ridley@rmwpc.com
Attorney for Defendant Andrew L. Grant

And I hereby certify that I have mailed or served the document or paper to the following participants via the U.S. Postal Service:

Grant Family Farms
1029 WCR 72
Wellington, CO  80549

Moises Rodriguez
657 Birch St.
Hudson, CO  80642

Maria Rodriguez
657 Birch St.
Hudson, CO  80642

/s Patricia Medige
Patricia Medige
COLORADO LEGAL SERVICES
1905 Sherman Street, Ste. 400
Denver, CO 80203-1811
Telephone: (303) 866-9385
FAX:  (303) 830-7860
E-mail: pmedige@colegalserv.org
Attorney for Plaintiffs