IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00805-LTB

JOHN DOES I-V

      Plaintiffs,

v.

MOISES RODRIGUEZ, individually, and in his official capacity,
MARIA RODRIGUEZ, individually, and in her official capacity,
ANDREW L. GRANT, individually, and in his official capacity, and
GRANT FAMILY FARMS, INC., a Colorado corporation

      Defendants.

---

ANDREW L. GRANT'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT

---

Defendant Andrew L. Grant ("Grant"), through undersigned counsel, and pursuant to F.R.C.P. 12(b)(6), respectfully requests that the claims asserted against him by plaintiffs John Does I-V ("Plaintiffs" or "Plaintiff Workers") be dismissed for the failure to state a claim upon which relief can be granted.  As grounds in support, Grant states as follows.

INTRODUCTION

Although the antithesis of the proverbial "deep pocket", Plaintiffs' motive for naming Grant in his individual capacity and in his capacity as the President of Grant Family Farms, Inc. (the "Family Farm Corporation" or "Corporation") is obvious nonetheless: The defendant Corporation has sought protection under the federal bankruptcy laws and the automatic stay that has entered as a result precludes this case from going forward against the

corporation, and defendants Moises and Maria Rodriguez (referred to jointly as the "Contractor Defendants") are both indigent and stand convicted of felonies premised on exactly the same conduct that underlies Plaintiffs' claims in this case.[1]

Plaintiffs' original 159-paragraph complaint sought, among other things, to hold Grant individually liable for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* (the "FLSA") and the Agricultural Worker Protection Act, 29 U.S.C. §1801 *et seq.* (the "AWPA"), on the theory that he was an "employer" or "joint employer" of Plaintiffs, together with the Family Farm Corporation and the Contractor Defendants.

Rather than answering Plaintiffs' complaint, Grant moved to have both of the claims against him dismissed on grounds that Plaintiffs had failed to allege facts that could support holding him individually liable. More particularly, Grant explained that the unlawful conduct alleged by Plaintiffs, if it occurred at all, unquestionably occurred solely at the hands of the Contractor Defendants – the people who recruited, hired, transported, housed, paid, allegedly threatened, generally abused, and charged fees to, the Plaintiffs.

In response, Plaintiffs filed their 189-paragraph First Amended Complaint and Demand for Jury Trial (the "Amended Complaint").[2] Predictably, Plaintiffs' Amended Complaint contains a number of new allegations about Grant (and for good measure, Plaintiffs add a state law claim for "unjust enrichment" against Grant). However, Plaintiffs'

---

[1] This Court can and should take judicial notice of other court proceedings, including the Family Farm Corporation's bankruptcy filing, *see, Advise of Bankruptcy* filed on May 4, 2006, and the judgment of conviction and sentence imposed upon the Contractor Defendants, as well as the fact that they were represented by either the Federal Defenders Office or CJA counsel in connection with their prosecution, *see, United States v. Rodriguez et al.,* 05-cr-448-EWN.

[2] Citations to the Amended Complaint are to the relevant paragraph number, *i.e.,* "¶1".

Amended Complaint fairs no better than their original complaint in attempting to hold Grant individually liable on any the claims asserted.

Plaintiffs' FLSA claim against Grant fails to state a claim for relief because Plaintiffs do not, and cannot, allege any facts to support even the inference that Grant was personally responsible for allegedly paying inadequate wages to Plaintiffs.

Plaintiffs' claims under the AWPA fails to state a claim as to Grant because even when Plaintiffs' allegations are taken as true, those allegations do not support the conclusion that Grant was a "joint employer" of the Plaintiffs together with the Family Farm Corporation and the Contractor Defendants under the "economic realities" test.   This same conclusion applies to Plaintiffs' FLSA claim, and is an additional basis for dismissing that claim.

Finally, because Plaintiffs' federal claims must be dismissed, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claim alleging "unjust enrichment".  In the alternative, that claim should be dismissed because Plaintiffs do not, and cannot, allege that Grant was inequitably enriched by the conduct of the Contractor Defendants about which Plaintiffs complain.

## ARGUMENT

"Under Fed.R.Civ.P. 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).   If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *Id.* In reviewing the sufficiency of the complaint, all well-pled facts, as opposed to

3

conclusory allegations, must be taken as true and all reasonable inferences must be liberally construed in the plaintiff's favor. *Weiszmann v. Kirkland & Ellis,* 732 F.Supp. 1540, 1543 (D.Colo.1990)." *Leal v. Sonic-Massey Pontiac Buick GMC, Inc.*, 444 F.Supp.2d 1163, 1164 (D.Colo.2006).

1.  There Are No Well-Pled Allegations In The Amended Complaint That Could Support Holding Grant Individually Liable For The Alleged Failure To Comply With The FLSA.

Plaintiffs' First Cause of Action alleges that the FLSA was violated as a result of the "fail[ure] to pay minimum wages to Plaintiff Workers". ¶136. Although the Amended Complaint charges in conclusory fashion and "upon information and belief", *ibid.*, that Grant also is responsible for this failure, the Amended Complaint is utterly silent in explaining Grant's role in this alleged violation.

On the other hand, the Amended Complaint is unmistakably clear in alleging that Plaintiffs' FLSA claim is premised solely upon the conduct of the Contractor Defendants, who "paid the Plaintiff Workers . . . [and] drafted their checks and handled the bookkeeping", ¶95, who "were making numerous unauthorized and illegal deductions from their pay" including charges for rent, transport, cleaning and "the ongoing total of smuggling fees owed", ¶96, who "'rounded-down' the numbers of hours worked", ¶99, and who charged Plaintiffs a "check-cashing fee", ¶100 – all of which had the net effect that, "Plaintiff Workers were paid much less than the minimum wage of $5.15 per hour mandated by the FLSA". ¶101.

A long and consistent line of authority establishes that only "a corporate officer with operational control *who is directly responsible for a failure to pay statutorily required wages*

4

is an 'employer' along with the corporation, and is jointly and severally liable for the payment of wages [under the FSLA]". *Schneider v. Landvest Corp.,* 2006 WL 322590 at *22 (D.Colo. Feb. 9, 2006) (emphasis added). *See also Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668, 678 (1st Cir.1998) (in determining whether corporate officers can be held individually liable for violations of the FLSA, courts "focus[] on the role played by the corporate officers in *causing the corporation to undercompensate employees* and to prefer the payment of other obligations and/or the retention of profits") (emphasis added); *Sasso v. Cervoni*, 985 F.2d 49, 50 (2nd Cir.1993) ("courts have imposed liability for a corporation's minimum wage obligations upon a corporate officer who was *personally responsible for making (or not making) the required payments*") (emphasis added); *Baird v. Kessler*, 172 F.Supp.2d 1305, 1312 (E.D.Cal.2001) ("[t]his court does not believe that Congress intended to make each individual manager and officer within a business, public or private, personally liable for violations of the FLSA, when a manager or officer cannot control the very things which may lead to violations of the FLSA"); *Wilke v. Salamone*, 404 F.Supp.2d 1040, 1050-51 (N.D.Ill.2005) (individual liability under the FLSA turns on "whether the individual had control over the alleged violation of the FLSA"); *Freemon v. Foley,* 911 F.Supp. 326, 331 (N.D.Ill.1995) ("so long as [a defendant] possess[es] control over *the aspect of employment alleged to have been violated*, the FLSA will apply to that individual") (emphasis added).

For example, in *Baystate,* the court reversed the Department of Labor Administrative Review Board's determination that corporate officers were individually liable for their company's violation of the FLSA because the Board's decision did not adequately take into account the question of who had "the personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act" and because the Board's

5

"findings do not establish that either [individual defendant] controlled Baystate's purse-strings or made corporate policy about Baystate's compensation practices." *Baystate,* 163 F.3d at 678.

Conversely, the court in *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983), affirmed the trial court's imposition of personal liability on a corporate officer whose conduct was the direct and decisive cause of the FLSA violation in question, holding that liability properly can be imposed upon "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment." *Id.* at 1513-14.

Plaintiffs' Amended Complaint does not contain a single well-pled allegation that could support a finding that Grant had any direct responsibility for compensating the Plaintiffs, or that Grant made any business decisions (*e.g.,* buying new equipment knowing that, in doing so, the Corporation would not be able to meet its labor costs) that resulted in the violations of the FLSA alleged.  Rather, the Amended Complaint alleges only that the Contractor Defendants, *after they had been fully paid by Grant*, *see* ¶95, would unilaterally impose charges and deductions that had the effect of allegedly violating the FLSA.

Thus, and notwithstanding the degree of control that Grant may have exerted over the Corporation's farming operation in general, no well-pled allegations are set forth in the complaint establishing that Grant formulated or implemented the pay practices at issue, or that he made any other decisions that directly resulted in the violations of law alleged.[3]

---

[3]The Amended Complaint does include the conclusory allegation that, "[u]pon information and belief, [Grant] knew of, condoned, and benefited from, these and other wrongful actions" --  an apparent reference to the "unauthorized and illegal deductions from

6

Accordingly, Plaintiffs' FLSA claim against Grant must be dismissed for the failure to state a claim upon which relief can be granted.  In the alternative, Plaintiffs' FLSA claim must be dismissed for the reasons set forth in Argument 2 below.

2.  Plaintiffs Fail To Allege Any Facts That Are Sufficient To Support A Finding That Grant Was A "Joint Employer".

Plaintiffs' Second Cause of Action alleges that the provisions of the APWA were violated by Contractor Defendants in seven different ways, six of which include the allegation that, "the Contractor Defendants and, upon information and belief, [Grant] violated the APWA".  ¶¶140-146.

Grant assumes for purposes of this motion that the Contractor Defendants were employers of the Plaintiffs for purposes of the AWPA and the FLSA.  Thus, in order for Grant to be held liable for any alleged violation of the AWPA or the FLSA, Plaintiffs must establish that he was a "joint employer" of Plaintiffs together with the Family Farm Corporation and the Contractor Defendants.  *See generally* 29 C.F.R. §500.20(h)(4)(i) (the AWPA's concept of "employ . . . includes the *joint employment* principles applicable under the [FLSA]", meaning "a condition in which a single individual stands in the relation of an employee to two or more persons at the same time").  The existence of a joint employment relationship is a question of law.  *E.g. Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir.1986).

Regulations promulgated under the AWPA identify five non-exclusive factors to be

---

[Plaintiffs'] pay." ¶96.  The allegation should be disregarded because Plaintiffs' offer no specific allegations to support the assertion that Grant knew of the Contractor Defendant's conduct (he did not and, therefore, he could not have "condoned it"), nor do Plaintiffs explain how Grant "benefited" from the Contractor Defendants' conduct (he did not).  For instance, there is no allegation that the amount of money paid by the Corporation to the Contractor Defendants was in any way contingent on the type or amounts of charges/deductions imposed on the workers, nor is there any allegation that monies retained by the Contractor Defendants through these charges/deductions were ever credited to the Family Farm Corporation.

7

considered in determining the existence of a joint employment relationship:

>   (A)   The nature and degree of control of the workers;
>
>   (B)   The degree of supervision, direct or indirect, of the work;
>
>   (C)   The power to determine the pay rates or the methods of payment of the workers;
>
>   (D)   The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; [and]
>
>   (E)   Preparation of payroll and the payment of wages.

29 C.F.R. §500.20(h)(4)(ii).

Without exception, Plaintiffs' Amended Complaint fails to allege any facts relevant to any of these criteria that are sufficient to establish that Grant was a joint employer of Plaintiffs together with the Contractor Defendants.

    a.    The Nature And Degree Of Control Of The Workers.

The Amended Complaint arguably contains a number of allegations about the nature and scope of Grant's purported control over Plaintiffs. However, the Amended Complaint does not contain any well-pled allegations that could support a finding that Grant exercised the level of control needed to find that he was a "joint employer" of Plaintiffs.

Plaintiffs allege that Grant had "day-to-day operational control of the business", ¶44, that he, "oversaw 'foremen' [who] in turn supervised and instructed Contractor Defendants", ¶45, and based on these two allegations, Plaintiffs assert that, "Grant at all relevant times had ultimate control over farm employees, including the decision over who worked at the farm". ¶46. Plaintiffs also allege that Grant "made [decisions about planting dates, harvest dates, crop rotation, or organic techniques]". ¶85.

8

However, the law is absolutely clear in establishing that the sort of generalized control over a farming operation that is alleged by Plaintiffs is not the type of control over actual workers that can support a finding of a joint employment relationship. *See, e.g., Aimable v. Long and Scott Farms,* 20 F.3d 434, 441 (11th Cir.1994) ("[c]ontrol arises, we believe, when the farmer goes beyond general instructions, such as how many acres to pick in a given day, and begins to assign specific tasks, to assign specific workers, or to take an overly active role in the oversight of the work . . . [and a]gricultural decisions -- decisions which only indirectly affected the number of workers necessary to harvest the land -- cannot be likened to 'control' in the FLSA/AWPA sense"); *Martinez-Mendoza v. Champion Int'l Corp.,* 340 F.3d 1200, 1209-10 (11th Cir.2003) ("[a]n alleged employer takes an 'overly active' role when it decides such things as (1) for whom and how many employees to hire; (2) how to design the employees' management structure; (3) when work begins each day; (4) when the laborers shall start and stop their work throughout the day; and (5) whether a laborer should be disciplined or retained").

The Amended Plaintiff contains no allegations that even hint that Grant exercised any of the forms of control that courts consistently require in order to find a joint employment relationship – there is no allegation that Grant determined what individuals would be hired, no allegation that Grant assigned specific tasks to specific workers, no allegation that Grant determined when work would begin each day, no allegation that Grant decided whether a worker should be disciplined or fired by the Contractor Defendants, *etc.* On the contrary, and to the extent the Amended Complaint touches on some of these matters, it establishes that it was the Contractor Defendants – and not Grant – who exercised the most direct and specific control over Plaintiffs. *See, e.g.,* ¶77 (Contractor Defendants "sat in his vehicle and watched

the workers in the fields through binoculars, supervising their work"); ¶79 (Contractor Defendants would "tell the workers to work faster and where to work, as he was paid to do by the Grower Defendants"); ¶80 ("While Contractor Defendant[s] . . . oversaw the workers in the fields, [Grant] decided which crops would be planted and when they would be harvested").

the Amended Complaint does not contain a single allegation that Grant exercised the level of control over these Plaintiffs, as opposed to his generalized control over the farm itself, that is required to find a joint employment relationship.

b. The Degree Of Supervision, Direct Or Indirect, Of The Workers.

The only allegation Plaintiffs make bearing on direct or indirect supervision is to say, as noted above, that Grant "oversaw [two] 'foremen' [who] in turn supervised and instructed Contractor Defendants". ¶45. Because Plaintiffs say nothing about the nature of Grant's alleged "oversight", and nothing about the nature of the foremen's "supervision and instruction", there is no basis for concluding that Grant exercised a sufficient degree of supervision over Plaintiffs to support a finding of joint employment, particularly when this allegation is contrasted with the specific allegations detailing the direct and close supervision of the workers undertaken by the Contractor Defendants. *See* ¶¶77, 79, 80.

c. The Power To Determine The Pay Rates Or The Methods Of Payment Of The Workers.

The Amended Complaint does not contain any allegation that Grant played any role whatsoever in determining the rate or method of payment of the workers. Instead, Plaintiffs consistently allege that it was the Contractor Defendants, and them alone, who were responsible for doing so. *See, e.g.,* ¶95 (Contractor Defendants "paid the Plaintiff Workers . .

10

. [and] drafted their checks and handled the bookkeeping"); ¶96 (Contractor Defendants were "making numerous unauthorized and illegal deductions from their pay" including charges for rent, transport, cleaning and "the ongoing total of smuggling fees owed"); ¶99 (Contractor Defendants "'rounded-down' the numbers of hours worked"); ¶100 (Contractor Defendants charged Plaintiffs a "check-cashing fee").

There are no allegations advanced by Plaintiffs that could support treating Grant as a joint employer of Plaintiffs under this factor.

> d.   The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers.

The Amended Complaint generally is consistent in alleging that it was the Contractor Defendants alone who set the employment conditions of the workers. *See, e.g.,* ¶51 (Contractor Defendants "arranged temporary housing"), ¶37, (Contractor Defendants bought and operated the migrant housing where Plaintiffs lived); ¶¶88-89 (Contractor Defendants "kept the workers in the fields until at least 6:00 p.m. every day") ¶95 (Contractor Defendants' "took care of paying the workers . . . and handled the bookkeeping").

The Amended Complaint does not contain a single allegation that Grant had the right to hire, fire or modify any of these conditions in any way. Indeed, because Plaintiffs' acknowledge that the Contractor Defendants provided labor to farms other than the Family Farm Corporation and that Plaintiffs did not work exclusively for the Family Farm Corporation, ¶75, it is highly doubtful that Grant would be in a position to dictate these sort of terms.

In any event, no allegations are made that support a finding that Grant was an employer based on this factor.

   e. Preparation of payroll and the
     payment of wages.

The Amended Complaint is consistent in alleging that the Contractor Defendants were solely responsible for determined what Plaintiffs' wages would be, what things would be deducted from those wages, and in determining the method of wage payment. *See, e.g.,.* ¶¶95-100.

 Not a single allegation is made about Grant playing any role whatsoever in any of this activity.

            *  *  *

Despite the fact that the Amended Complaint is Plaintiffs' second attempt at pleading facts that are sufficient to avoid dismissing the claims advanced against Grant, Plaintiffs still have failed to allege virtually any facts that could support a favorable finding on any of the "joint employer" factors that must be satisfied in order to hold Grant individually liable for alleged violations of the FLSA and AWPA.  Accordingly, the claims advanced against Grant must be dismissed for the failure to state a claim upon which relief can be granted.

3. Plaintiffs' Unjust Enrichment Claim Should
  Be Dismissed.

Because Plaintiffs' federal law claims must be dismissed, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claim of unjust enrichment.  In the alternative, that claim must be dismissed.  In order to establish a claim of unjust enrichment under Colorado law, Plaintiffs "must show that: (1) a benefit was conferred on the defendant by the plaintiff; (2) the benefit was appreciated by the defendant; and (3) the benefit was accepted by the defendant under such circumstances that it would be inequitable

for it to be retained without payment of its value." *Humphrey v. O'Connor,* 940 P.2d 1015, 1021 (Colo.App.1996).

The Amended Complaint fails to state a claim for unjust enrichment because Plaintiffs do not, and cannot, allege any facts that could support a finding that the benefit of Plaintiffs' labor was accepted by Grant under circumstances that it would make it inequitable for it to be retained without payment of its value, because the fact is that Grant did pay the Contractor Defendants for Plaintiffs' labor.  And, while Plaintiffs allegedly did not receive the wages they are legally entitled to, that is no basis for making Grant pay for that labor twice.

Plaintiffs have made no allegation that Grant paid less to the Contractor Defendants than he would have paid had the Contractor Defendants not engaged in the conduct being complained of.  Thus, Plaintiffs' claim of unjust enrichment fails to state a claim for relief.

Respectfully submitted this 8th day of January, 2007.

   s/ Patrick L. Ridley
_____
Patrick L. Ridley
Robert F. Fishman
Ridley, McGreevy & Weisz, P.C.
1800 15th Street, Suite 101
Denver, CO 80202
(303)629-9700
(303)629-9702 – facsimile
ridley@rmwpc.com

## CERTIFICATE OF SERVICE

       I hereby certify that on this 8th day of January 2006, I served a true and correct copy of the foregoing **ANDREW L. GRANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** via the USDC CM/ECF system to the following:

Patricia Medige
Colorado Legal Services
pmedige@colegalserv.org

                                            s/ Erin C. McCormick
                                            _____
                                            Erin C. McCormick