**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.     06-cv-805-LTB

JOHN DOES I-V,

      Plaintiffs,

v.

MOISES RODRIGUEZ, individually, and in his official capacity,
      a/k/a MOISES RODRIGUEZ-TENA
      a/k/a MOISES TENA RODRIGUEZ, *et al.*

      Defendants.

---

**PLAINTIFFS' RESPONSE TO ANDREW L. GRANT'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

Defendants' Motion to Dismiss should be denied. Plaintiffs' First Amended Complaint properly states claims upon which relief can be granted and provides Defendant Andrew L. Grant with fair notice of the basis of the claims against him. Dismissal under Fed. R. Civ. P. 12(b)(6) is a harsh remedy that is inappropriate in the instant case.

## I.  INTRODUCTION

Defendant Andrew L. Grant's motion seems to suggest that Plaintiffs John Does I-V are required to know – and plead – every possible fact about the operations of Grant Family Farms and the interrelationship between Andrew L. Grant and the other defendants, particularly the Contractor defendants Moises and Maria Rodriguez.

As the complaint makes clear, Plaintiffs John Does I-V arrived in the U.S. in 2004 and subjected to a scheme of extreme control and exploitation. *See, generally,* Plaintiffs' First Amended Complaint and Demand for Jury Trial, (hereinafter "First Am. Compl.") at ¶¶ 35-110.

As employees, and especially as employees in a highly intimidating environment, Plaintiffs did not have access to all relevant information about Defendants' internal business operations. As new arrivals to the U.S., living in an isolated camp and working long hours, they were not in a position to observe all of Defendant Andrew L. Grant's daily activities. First Am. Compl. ¶ 64, 71, 72, 88, 89, 90. No answer has been filed in this case. Plaintiffs have had no opportunity to conduct discovery and thus have limited information. Nevertheless, it was clear to them that Defendant Andrew L. Grant had operational control over the operations (First Am. Compl. ¶ 44). Defendant Grant was at the top of the farm's supervisory structure, and hired foremen named Ruben and Felipe, who then supervised Contractor Defendants Moises Rodriguez and Maria Rodriguez (First Am. Compl. ¶ 45). Even these allegations alone, if taken as true, are sufficient to satisfy Fed. R. Civ. P. 12(b)(6).

The appropriate mechanism for fleshing out the elements of the "economic realities" and "joint employer" tests is through discovery and then Summary Judgment pursuant to Fed. R. Civ. P. 56 or trial as appropriate. The complaint is carefully and, in fact, conservatively pleaded. Plaintiffs John Does I-V clearly have stated the relevant claims against each of the four defendants.

## II.  ARGUMENT

A.     FED. R. CIV. P. 12(b)(6)  Generally

Defendant Andrew L. Grant argues that the claims of John Does I-V should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. Defendants have failed to prove that Plaintiffs' claims are insufficient. Dismissal under Fed. R. Civ. P. 12(b)(6) is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Morse v. Regents of the Univ. of Colo.,* 154 F.3d 1124, 1127 (10th Cir. 1998) (internal quotation marks and citation omitted).  Such a dismissal will only be found "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff."  *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997) (quoting *Fuller v. Norton*, 86 F.3d 1016, 1020 (10th Cir. 1996)).

The *Yoder* case, for example, involved a claim that was time-barred.  *Yoder, supra,* 104 F.3d at 1225. Here, on the other hand, Defendant Grant merely points out factual unknowns or "gray" areas.  He fails, though, to demonstrate that under no circumstances could Plaintiff John Does I-V show that Defendant Grant is a joint employer under the Migrant and Seasonal Agricultural Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.,* and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* particularly if the facts are construed in the light most favorable to the plaintiffs.

.

### B. Employer Liability under AWPA and FLSA

The AWPA (sometimes called "MSPA") sought to address exactly the sort of exploitation suffered by Plaintiffs John Does I-V in 2004. In fact, the legislative purpose in enacting the AWPA was "to reverse the historical pattern of abuse and exploitation of migrant and seasonal farm workers * * *," which would only be accomplished by "advanc[ing] * * * a completely new approach. H. Rep. No. 97-885, 97th Cong., 2d Sess., 1982, *cited in* 29 C.F.R. § 500.20(h)(5). Congress intentionally adopted the FLSA joint employer doctrine as the "central foundation" of the AWPA and "the best means by which to insure that the purposes of this MSPA [AWPA] would be fulfilled." 29 C.F.R. § 500.20(h)(5)(ii).

The AWPA adopts the FLSA definition of "employ," which is "to suffer or permit to work." 29 U.S.C. § 203(g). Employer is defined as ". . . any person acting directly or indirectly in the interest of an employer in relation to an employee . . .". 29 U.S.C. § 203(d).

The facts of the current case raise three related issues: 1. whether Defendant Growers were "employers" of the Contractor Defendants, in which case they also would be employers of Plaintiff Worker John Does I-V;  2. whether, even if Contractor Defendants were bona fide independent contractors and not employees of Defendant Growers, they still had established a "joint employer" relationship in which both sets of Defendants were employers of Plaintiffs John Does I-V and thus liable for AWPA and FLSA violations; and 3.) whether Defendant Andrew L. Grant in his individual capacity was a joint employer. Defendant Andrew L. Grant's Motion to Dismiss does not fully identify these issues or the requirements of 29 C.F.R. § 500.20(h).

### 1.   **Employer-Employee Relationship**

First, the regulations set forth the test for determining whether an employer relationship exists, here meaning whether Defendant Grant Family Farms and Defendant Andrew L. Grant were actually the employers of Contractor Defendants Moises Rodriguez and Maria Rodriguez. This determination, called an "economic reality test" is based upon an evaluation of all of the circumstances, *including* the following:

> (i) The nature and degree of the putative employer's control as to the manner in which the work is performed;
> (ii) The putative employee's opportunity for profit or loss depending upon his/her managerial skill;
> (iii) The putative employee's investment in equipment or materials required for the task, or the putative employee's employment of other workers;
> (iv) Whether the services rendered by the putative employee require special skill;
> (v) The degree of permanency and duration of the working relationship;
> (vi) The extent to which the services rendered by the putative employee are an integral part of the putative employer's business.

29 C.F.R. § 500.20(h)(4)(i) to (vi.)

If Defendants Andrew L. Grant and Grant Family Farms were determined to be employers of Contractor Defendants Moises Rodriguez and Maria Rodriguez, they also would be determined to be the employers of the Plaintiffs John Does I-V.  It is worth noting that these are not the factors Defendant Andrew L. Grant sets forth as the requirements of 29 C.F.R. § 500.20(h)(4)(ii) (Motion to Dismiss at 8).  Nor are they factors that can simply be determined on the basis of a Complaint. Instead, further discovery is required to elicit the many facts and make this determination.

*Plaintiffs' Response to Andrew L. Grant's Motion to Dismiss Plaintiffs' First Amended Complaint      p. 5*

2. **Joint Employer Relationship**

If it is determined that a farm labor contractor is an independent contractor, it still must be determined whether or not the employees of the farm labor contractor are also jointly employed by the agricultural employer/association along with the farm labor contractor. 29 C.F.R. § 500.20(h)(5)(i). Joint employment is defined the same under the FLSA and the AWPA. Such joint employment relationships, which are common in agriculture, have been addressed both in the legislative history and by the courts. *Id.*

"[E]ven if a farm labor contractor is found to be a bona fide independent contractor, * * * this status does not as a matter of law negate the possibility that an agricultural employer may be a joint employer * * * of the harvest workers" together with the farm labor contractor. 29 C.F.R. § 500.20(h)(5)(ii). If the facts establish that two or more persons are "*completely dissociated*" [emphasis added] with respect to the employment of a particular employee, a joint employment situation does not exist. 29 C.F.R. § 500.20(h)(5).

The regulations and case law also set forth various "economic reality" tests for determining whether a "joint employment relationship" exists. These factors are intended to identify how independent the actors are from each other. The more interrelated the putative employers are, the more likelihood there is that there is a joint employment relationship. This determination depends upon *all the facts* in the particular case [emphasis added]. 29 C.F.R. § 500.20(h)(5). Defendant Andrew L. Grant correctly points out that the factors he reviews in his Motion to Dismiss are "non-exclusive." (Motion to Dismiss at p. 7-8). Indeed, the factors Defendant Grant located at 29

C.F.R. § 500.20(h)(4) are different from those located by Plaintiffs John Does I-V in the same regulations.

In determining whether an employment relationship exists between the agricultural employer and the agricultural worker, and thus whether the agricultural employer is a joint employer, regardless of the involvement of a farm labor contractor, the ultimate question to be determined – again -- is the economic reality: whether the worker is so economically dependent upon the agricultural employer/association as to be considered its employee.

"Among" the factors to be considered are:

(A) Whether the agricultural employer/association has the power, *either alone or through control of the farm labor contractor* to direct, control, or supervise the worker(s) or the work performed (such control may be either direct or indirect, taking into account the nature of the work performed and a reasonable degree of contract performance oversight and coordination with third parties);

(B) Whether the agricultural employer/association has the power, *either alone or in addition to another employer*, directly or indirectly, to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payment for the worker(s);

(C) The degree of permanency and duration of the relationship of the parties, in the context of the agricultural activity at issue;

(D) The extent to which the services rendered by the worker(s) are repetitive, rote tasks requiring skills which are acquired with relatively little training;

(E) Whether the activities performed by the worker(s) are an integral part of the overall business operation of the agricultural employer/association;

(F) Whether the work is performed on the agricultural employer/association's premises, rather than on premises owned or controlled by another business entity; and

(G) Whether the agricultural employer/association undertakes responsibilities in relation to the worker(s) which are commonly performed by employers, such as preparing and/or making payroll records, preparing and/or issuing pay checks, paying FICA taxes, providing workers' compensation insurance, providing field sanitation facilities, housing or transportation, or providing tools and equipment or materials required for the job (taking into account the amount of the investment). [emphasis added].

29 C.F.R. § 500.20(h)(5)(iv).

Once again, these factors require additional fact-finding and determinations of these factors are not appropriate for a Fed. R. Civ. P. 12(b)(6) discussion.

However even if this test were applied to the complaint, many or most of the joint employer factors would be met. For example, Defendant Growers had the power, either alone or through control of the Defendant Contractors to direct, control, or supervise the worker(s) or the work performed. (First Am. Compl. ¶ 82). The work was performed on Defendant Growers' premises (First Am. Compl. ¶ 83). The work performed by Plaintiffs John Does I-V was repetitive, rote tasks requiring skills which are acquired with relatively little training. (First Am. Compl. ¶ 73, 74). The activities performed were integral to the Defendant Growers' operations of selling organic vegetables and herbs. (First. Am. Compl. ¶ 73, 74).

The regulations and case law clearly state that these factors are "analytical tools." 29 C.F.R. § 500.20(h)(5)(iv). "The consideration of each factor, as well as the determination of the ultimate question of economic dependency, is a qualitative rather than quantitative analysis. The factors are not to be applied as a checklist." *Id.* No one factor will be dispositive. Numerous cases have applied some or all of these factors. See, e.g., *Charles v. Burton,* 169 F.3d 1322 (11th Cir. 1999), *Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983). One of the few Tenth Circuit cases addressing grower liability in an agricultural context determined that the grower was the employer because he was acting directly or indirectly in the interest of an employer in relation to the employees, thus applying the definition at 29 U.S.C. § 203(d). *Hodgson v. Paul Okada and Okada Farms, Inc.* 472 F.2d 965, 967 (10th Cir. 1973). Indeed, the court declined to answer the question

of whether an unrelated supervisor was an independent contractor, finding it "irrelevant in determining whether the Okadas are responsible under the Act" *Id.*

The application of any of the various factors generally comprising the "economic realities test" is appropriate only after fact-gathering. No case or procedural rules states that all factors must be pled in the initial complaint. However, as reviewed above, if the factual allegations of the complaint are taken as true and viewed in the light most favorable to the plaintiffs, Defendant Growers are either employers or joint employers of Plaintiff Workers John Does I-V.

      3.     **Individual Liability of Defendant Andrew L. Grant**

The remaining issue is whether Defendant Andrew L. Grant, as registered agent and president of Defendant Grower Grant Family Farms, is individually liable for AWPA and FLSA violations as a joint employer. The standard is *not* the corporate "piercing the corporate veil" requirement. *See, e.g., Patel v. Wargo,* 803 F.2d 632, 636 (11th Cir. 1986) ("….Congress has expressly disregarded the corporate shield with respect to the analysis of coverage under the FLSA.").

Rather, generally a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. *Patel v. Wargo,* 803 F.2d at 637-8 (citing, *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983)). Here, the complaint alleges exactly that, that Defendant Andrew L. Grant "at all relevant times had day-to-day operational control of the business." (First Am. Compl. ¶ 44). If taken as true and viewed in the light most favorable toward the plaintiffs, Defendant Andrew L.

Grant was a joint employer holding individual liability for the AWPA and FLSA violations suffered by the Plaintiffs John Does I-V.  *See also, Antunez v. G & C Farms, Inc.,* 1993 U.S. Dist. LEXIS 21353; 126 Lab. Cas. (CCH) P33,015 (D. N.M. 1993) (finding individual liability by company president and treasurer because he was involved in the day-to-day farm operation and ultimately made all of the key decisions concerning the harvest for the period at issue).

Grower Defendants Andrew L. Grant and Grant Family Farms bore the financial risks of the farm operation and, in turn, received its profits (First Am. Compl. ¶ 86).  Grower Defendants Andrew L. Grant and Grant Family Farms made the business decisions regarding planting dates, harvest dates, crop rotation and organic techniques.  (First Am. Compl. ¶ 85).

Based on the above tests, the complaint properly pleads that Defendant Grower Andrew L. Grant is a joint employer under the FLSA and AWPA.  The allegations in the complaint, construed in the light most favorable to the plaintiffs, show that the Contractor Defendants and Defendant Andrew L. Grant were not "completely dissociated." The Motion to Dismiss should be denied.

4.     **Unjust Enrichment Claim**

Similarly, the First Amended Complaint properly provides Defendant Andrew L. Grant with notice of the Unjust Enrichment claim against him.  Further discovery is required to demonstrate exactly how this low-cost labor helped his earnings, and other information which would provide a measure of unjust enrichment.  However Plaintiffs cannot be expected to know this information without more fact-finding.

### III.     CONCLUSION

WHEREFORE, Plaintiffs respectfully request that Defendant Andrew L. Grant's Motion to Dismiss be denied.  Plaintiffs' claims should be heard on the merits and Plaintiffs respectfully request that Defendant Andrew L. Grant be ordered to Answer and that discovery proceed. Defendants fail to meet their burden of demonstrating that the drastic remedy of dismissal is appropriate.

Dated: January 26, 2007

/s Patricia Medige
Patricia Medige
**Colorado Legal Services**
1905 Sherman Street, Suite 400
Denver, CO  80203
Telephone: (303) 866-9385
FAX: (303) 830-7860
E-mail:   pmedige@colegalserv.org

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of January, 2007, I electronically filed the foregoing PLAINTIFFS' RESPONSE TO ANDREW L. GRANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT using the EM/ECF system which will send notification of such filing to the following e-mail addresses:

    Patrick L. Ridley
    ridley@rmwpc.com

    Patricia L. Medige
    pmedige@colegalserv.org

    /s Patricia Medige
    Patricia Medige
    Attorney for Plaintiffs
    **Colorado Legal Services**
    1905 Sherman Street, Suite 400
    Denver, CO  80203
    Telephone: (303) 866-9385
    FAX: (303) 830-7860
    E-mail: pmedige@colegalserv.org