**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Action No. 06-cv-00805 - LTB

JOHN DOES I - V

      Plaintiffs,

v.

MOISES RODRIGUEZ, individually, and in his official capacity,
MARIA RODRIGUEZ, individually, and in his official capacity,
ANDREW L. GRANT, individually, and in his official capacity, and
GRANT FAMILY FARMS, INC, a Colorado corporation

      Defendants.

_____

**Order**
_____

Defendant Andrew L. Grant ("Grant") seeks dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) of claims by plaintiffs John Doe I-V for violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.*, and unjust enrichment, all related to plaintiffs' work on the Grant Family Farms. For the reasons discussed below, Grant's motion is DENIED.

**I.  BACKGROUND**

The factual background of this case, as described in plaintiff's first amended complaint, is as follows. Plaintiffs are migrant agricultural workers, all Mexican nationals, brought surreptiously into the United States from Mexico by defendants Moises Rodriguez and Maria Rodriguez (referred to herein as "contractor defendants") to work on Grant Family Farms in Weld County,

Colorado. The contractor defendants are farm labor contractors who recruit, solicit, hire, transport and house farm laborers to work on farms in Colorado.

In March of 2004, the contractor defendants recruited workers in Mexico, including the plaintiffs, to come to Colorado for farm labor. From approximately April 2004 until October 2004, the plaintiffs worked at a farm labor camp operated by the contractor defendants located at 22185 Highway 52, Hudson, CO (the "Highway 52 compound.") The plaintiffs worked mainly, but not exclusively, at Grant Family Farms. Plaintiffs contend that the contractor defendants had a long-standing business relationship with Grant Family Farms and had been providing them with farm labor in this manner for several years. The plaintiffs describe the conditions at the Highway 52 compound as unsanitary, lacking safe drinking water, without sufficient toilets and showers, infected by insects and overcrowded. Plaintiffs also allege that their circumstances were tantamount to debt peonage, since they were informed upon their arrival that they owed the contractor defendants $1,300 in smuggling fees and could not end their employment until they repaid this putative debt.

Plaintiffs state that they worked long hours, from 4:30 am to 8:00pm, inclusive of travel time to the farm, and their work on Grant Family Farms was "backbreaking" work weeding the fields, since the Grant Family farm did not use pesticides. Plaintiffs contend that they were under constant surveillance by Moises Rodriguez and farm foremen, to prevent them from leaving the farm and to maintain the pace and intensity of their work. Moises Rodriguez patrolled the perimeter of the farm to prevent escapes, and also tried to intimidate the workers by discharging a firearm and by stating he would find them if they tried to escape.

The contractor defendants made numerous deductions from the workers' twice monthly pay. These included rent charges of $50 twice per month, transportation charges of $48 twice per month, charges for bathroom cleaning, deposits for rain gear, farming tools and payments for fees owed for smuggling them into the country. The contractor defendants deducted social security payments from the workers, even though the workers did not have social security numbers. The contractor defendants charged the workers check cashing fees of 1%. Cumulatively, this meant that the workers were paid much less than the $5.15/hour minimum wage, and some weeks were paid as little as $2.90/hour for a sixty hour work week.

Grant Family Farms, located in Wellington, Colorado, was incorporated in Colorado on May 5, 1998. Grant is the company's registered agent and serves as the company's President. The plaintiffs allege that Grant made all of the essential business decisions regarding the farm, including what to plant, where to plant and when to harvest. Grant owned all of the tools and materials, and directly supervised the contractors, either personally or through intermediary foremen. Grant also bore all of the financial risks of the farm operations.

The plaintiff workers ultimately escaped from the camp. An investigation ensued that led to the indictment, conviction and sentencing of the contractor defendants, as well as other defendants not a party to this case, for transporting and harboring illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) & (iii). On April 26, 2006 the plaintiffs brought claims for violations of the FLSA against all defendants, violations of the AWPA against all defendants, violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against the contractor defendants, violations of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589 & 1590, against the contractor defendants, and unjust enrichment against

Grant and the Grant Family Farms. Grant moves to dismiss the FLSA, AWPA and unjust enrichment claims against him under Fed R. Civ. P. 12(b)(6) for failure to state a claim.

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied.  *See id*.  In evaluating a 12(b)(6) motion to dismiss, I "accept the factual allegations in the complaint as true" and I  "resolve all reasonable inferences in the plaintiff's favor." *Morse v. Regents of University of Colorado,* 154 F.3d 1124, 1126-1127 (10th Cir. 1998). "Dismissal under Rule 12(b)(6) is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice." *Id.* at 1127. Nonetheless, in a Rule 12(b)(6) motion I consider well-pleaded facts, "as distinguished from conclusory allegations." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir. 1984).

I construe Fed. R. Civ. P. 12(b)(6) in conjunction with Fed. R. Civ. P 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley* 335 U.S. at 47.  "Rule 8(a) established a pleading standard without regard to whether a claim will succeed on the merits." *Swierkiewicz v. Soreman N.A.,* 534 U.S. 506, 515, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002). "Claims lacking merit may be dealt with through summary judgment under Rule 56." *Id.* at 514.

### III.  DISCUSSION

A.  <u>Individual Liability Under the Fair Labor Standards Act</u>

Grant argues that plaintiffs' FLSA claims must be dismissed because they have failed to allege specific facts showing that he is personally liable under the FLSA. Congress did not intend the FLSA to lightly disregard the shield from personal liability provided by doing business in a corporate form. *Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668, 677 (1st Cir. 1998). The FLSA does not impose personal liability on "any supervisory employee, even though without any control over the corporation's payroll . . for the unpaid or deficient wages of other employees." *Id.* Nor does the FLSA make liable "any corporate officer or other employee with ultimate operational control over payroll matters. " *Id.*  However, because the FLSA does "transcend traditional common law parameters of the employer-employee relationship" individual liability under the FLSA can attach to corporate officers based on such factors as

> "the significant ownership interest of the corporate officers; their operational control of significant aspects of the corporation's day to day functions, including compensation of employees; and the fact that they  personally made decisions to continue operating the business despite financial adversity and the company's inability to fulfill its statutory obligations to its employees."

*Id.* at 677-678.

While Grant argues that the complaint does not meet this test, he overstates the plaintiffs' burden at this stage of the case, and understates the specificity of their complaint.  Plaintiffs allege that Grant is the sole owner of the farm where the workers did most of their work, that he had operational control of the business, and that he was aware of the illegal deductions from the workers' pay. These allegations  are sufficient to place Grant on notice of the claims against him. The plaintiffs have satisfied their pleading obligations under Rule 8(a) and Grant's motion fails.

B.   Employer Status Under the FLSA and the AWPA

Grant also argues that plaintiffs have failed to allege facts sufficient to show that he is an employer under the FLSA or the AWPA, requiring dismissal of both claims. The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . ." 29 U.S.C. § 203(d). The FLSA broadens the definitions of employer and employee beyond "strict application of traditional agency principles." *Baker v. Flint Engineering & Const. Co.,* 137 F.3d 1436, 1440 (10th Cir. 1998). The FLSA focuses instead on "the economic realities of the relationship" between the employee and the employer, and includes evaluating such factors as "whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Id.* Employer status in the food growing industry under the FLSA "must be determined from the relationships in this industry and from a consideration of the facts and circumstances under which pickers are employed." *Mitchell v. Hertzke,* 234 F.2d 183, 189 (10th Cir. 1956). The AWPA generally relies on the same definition of employer and employee as the FLSA. 29 C.F.R. § 500.20(h).

The FLSA and the AWPA provide two routes to liability relevant to this case. First, an employer-grower, like Grant, may be liable directly as an employer if the contractor it relies on is itself legally an employee of the grower. In such an instance, the workers in the contractor's crew are also the grower's employees. 29 C.F.R. § 500.20(h). Determining whether a farm labor contractor is a grower's employee or contractor is based on "an evaluation of all of the circumstances," including the following factors:

> "(i) The nature and degree of putative employer's control as to the manner in which the work is performed; (ii) The putative employee's opportunity for profit or loss depending upon his/her managerial skill;(iii) The putative employee's investment in equipment or materials required for the task, or the putative employee's employment of other workers; (iv)Whether the services rendered by the putative employee require special skill; (v)   The degree of permanency and duration of the working relationship; (vi) The extent to which the services rendered by the putative employee are an integral part of the putative employer's business.

29 C.F.R. § 500.20(h)(4).

Second, if a contractor is legally a grower's contractor, and not a grower's employee, the grower may still be an employer of the contractor's workers as a joint employer. 29 C.F.R. § 500.20(h)(5). Joint employer status considers "all the facts in the particular case," and whether "two or more persons are completely disassociated with respect to the employment of a particular employee." *Id.* Several factors serve as "analytic tools" in determining joint employer status, including:  whether the grower has the power, "either alone or through control of the farm labor contractor to direct, control or supervise the workers or the work performed," whether the grower has the power to hire, fire, direct the work or modify work conditions, the degree of permanence of the relationship of the parties, the level of skill of the workers, the importance of the services provided by the workers to the overall business operation of the grower, whether the work is performed on the grower's premises and whether the grower is responsible for activities normally done by employers, such as payroll records, issuing pay stubs and providing tools and equipment. 29 C.F.R. § 500.20(h)(5)(iv)(A) - (G).

Grant argues, in relation to the FSLA and the AWPA claims, that the plaintiffs have not alleged facts sufficient to satisfy the legal tests enunciated in the federal regulations. (Grant

disputes the legal test for joint employment articulated by plaintiffs, but their test is based on the current version of the federal regulations, while Grant cites to a version of the regulations, and to interpretive case law, that pre-date 1997 revisions in federal regulations. *See* 62 Fed. Reg. 11747, March 12, 1997.)  Grant contends that the allegations in the complaint are too vague to show that he exercised the control necessary to be an employer under the FLSA, and that in fact the complaint describes the contractors as performing the specific functions that define employer status, including handling payroll, providing the workers with tools, recruiting the workers and providing them their daily oversight. Grant points out that the complaint even states that the workers performed at least some of their work on lands not owned or leased by Grant.

However, the complaint also makes numerous allegations that, if true, satisfies the legal definitions of employer or joint employer. Plaintiffs allege that Grant had day to day operational control of the business (Compl. ¶ 44), that Grant oversaw the foremen (Compl. ¶ 45), that the contractors regularly consulted with Grant in the course of the work day (Compl. ¶ 81), that the contractors acted at the direction of or under the supervision of the growers (Compl. ¶ 82), that the growers knew of, condoned and benefitted from the illegal deductions from the workers' pay, (Compl. ¶ 96) and knew of, willfully ignored and condoned abuse of the workers. (Compl. ¶ 104). These allegations, while general to some degree, are sufficient to put Grant on notice of the nature of the plaintiffs' claim. *See Conley,* 335 U.S. at 47.

While Grant cites to some authority supporting his general argument relating to the level of proof necessary in AWPA and FLSA claims, these cases were decided on summary judgment, with a much fuller factual record. *See Aimable v. Long and Scott Farms,* 20 F.3d 434 (11th Cir. 1994) and *Martinez-Mendoza v. Champion Int'l Corp.,* 340 F.3d 1200 (11th Cir. 2003). Grant

does not point me to any cases dismissing under Rule 12 an FLSA or AWPA claim with this level of detail. At this stage of the case I cannot say that plaintiffs can prove no set of facts that would show that Grant was an employer under the FLSA.  Grant's motion to dismiss fails.

C.      Unjust Enrichment

Grant moves to dismiss plaintiffs' claim for unjust enrichment. To recover for unjust enrichment, plaintiffs must show that "(1) a benefit was conferred on the defendant by the plaintiff; (2) the benefit was appreciated by the defendant; and (3) the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value." *Humphrey v. O'Connor,* 940 P.2d 1015, 1021 (Colo. Ct. App. 1996). "The scope of this remedy is broad . . . with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another." *Id.*

Grant argues that plaintiffs have not stated a claim for unjust enrichment because Grant paid the contractor defendants for plaintiffs' labor. However, the mere fact that Grant paid the contractors does not ineluctably lead to dismissal of this claim. In *Humphrey*, the plaintiffs alleged only that the defendant "has accepted and appreciated" plaintiff's overpayment and that "it would be unfair, unjust and inequitable for (defendant) to retain the amount by which (plaintiff) overpaid." *Id.* at 1021-1022. The court found this language, far more sparse and less detailed than the language in plaintiff's complaint here, to be sufficient to state a claim for unjust enrichment. *Id.* at 1022. The Court also reasoned that the mere fact that there was a mutual benefit to the parties did not obviate the unjust enrichment claim. *Id.* Considering the complaint in the light most favorable to the plaintiffs, as the Court did in *Humphrey* and as I must do here, it is significant that plaintiffs allege that Grant was aware of the contractor's illegal deductions from their pay,

9

and that Grant ran the day to day operations of the farm, including oversight of the contractors. I cannot say that plaintiffs can prove no set of facts showing that Grant's acceptance of their labor under these conditions was unjust or inequitable. Grant's motion to dismiss the unjust enrichment claim fails.

It is so Ordered that

    Defendant's motion to dismiss plaintiff's first amended complaint (Docket # 9) is DENIED.

DONE and ORDERED, this   2nd   day of March, 2007 at Denver, Colorado.

                                        s/Lewis T. Babcock
                                        United States District Chief Judge